**SHIPLEY, In re**

Juvenile Court, Lucas County.

No. 21806.

Frank McManus, Toledo, for the mother.
Max Britz, Toledo, for the father.

## OPINION

By ALEXANDER. J.

On motion of Betty Shipley Nicholas, mother of above wards, for judgment against their father. Leo Shipley, in the lump sum of $6320.00, the following facts are found:

On July 15, 1930 the mother and father were divorced in the common pleas court of this county; custody of the children (then aged four and one) was awarded to the mother; the father was ordered to pay her $10.00 weekly for their support; he was granted the right to visit them at reasonable times; and the case was certified to this court for further proceedings as to the children.

During the first year the father paid weakly rather than weekly; on June 23, 1931, when his payments totaled $167.50, he stopped altogether: since then he has paid nothing on the order (although in 1941 he acceded to the mother's request that he pay the cost of an operation amounting to $261.35).

For a time the mother pursued a variety of remedies; she had him arrested in the Municipal Court of Toledo for assault and battery; then for neglecting the children (for which he served three months); then she had him cited in this court. The battle waxed and waned. The final skirmish was in December 1931, after which the mother withdrew and made no further move to collect until September 1942. when she filed the motion we are considering.

The father maintains there was an armistice. an understanding that if he kept away from her and the children she would not bother him about the support-money. The mother denies this and testifies the reason she did not bother him was that, although

she knew where to reach him, she felt he was not earning enough to pay. At any rate, the father likewise withdrew and from that time to the present he has not gone to the mother's home, visited the children, seen them or had any contact with them whatsoever.

As the father was fading out of the picture a new factor was entering it in the person of Edgar J. Nicholas, who married the mother on Nov. 10, 1933. The children were taken into the new home of the mother and step-father; he gave them his name; for ten years he has supported them and stood in loco patris; they are known in school and community as the Nicholas children; they have never been in want and appear to be thriving in the comparatively peaceful atmosphere of their new home.

Under these facts is the mother entitled to judgment against the father for the accumulated arrearage on the weekly support order, amounting to over six thousand dollars?

Counsel for the father cites authorities indicating the mother has been guilty of laches in that she allowed 11 years to elapse without making any move to enforce her claim. Counsel for the mother counters that the authorities cited all apply to action for the recovery of alimony, and that as child-support is distinguishable from alimony they could not apply here.

Our attention has not been directed to any case adjudicating the availability of laches as a defense in an action purely for child-support. That it may be a defense in an alimony case seems fairly well settled:

27 C. J. S. Divorce §256: The right to enforce a judgment or decree for alimony may be lost by laches.

16 O. Jur. 271: Though the doctrine of laches has its primary application as a defense in a suit in equity * * * it may also be applied to incidental proceedings in a strictly legal action, such as * * * an action for alimony, which is said to be equitable in its nature. (See also Morgan v Wakelin, 24 O. C. C. (N. S.) 68, aff. 72 Oh St 656).

It is true there are a number of legal distinctions between alimony and child-support; however, we see no reason to draw a distinction when the question is like the one presented here. In one case the ex-wife has borne a burden lawfully resting upon the ex-husband: in the other the mother has borne a burden lawfully resting upon the father; in either, she simply seeks reimbursement therefor.

The Lucas County (Ohio) Court of Appeals has well stated the philosophy of the lump sum judgment in a child-support case:

Ramberg v Ramberg (No. 3533, unreported): * * * and if the father has not supported the child as he was ordered to do, and if his default has thrown upon others that duty and obligation, then,

unless a lump sum judgment for arrearages can be entered, the father escapes his legal obligations and those who may have borne them for him have no remedy.

Since it appears the principles governing the rendition of lump sum judgments for child-support are identical with those governing such judgments for alimony, it follows that the principles making laches available as a defense in an alimony case are equally valid in a case for child-support. And since in case at bar the mother made no demand and took no action for 11 years we hold she has been guilty of laches and we are not bound to respect her claim.

On the other hand it is contended the father has not been without guilt in the same respect. The period of his default covers roughly the well-known depression. If there was a substantial change in the condition of the parties, or either of them, he had a legal right to apply to this court for modification of the order. This right he failed to exercise, and he too appears to have been guilty. This seems to have a bearing on the issue:

**16 O. Jur. 273:** The defendant may be estopped by his own default to set up the plaintiff's laches, as where he has himself induced the delay, * * *.

When both parties are thus guilty it would be an easy "out" for the court to leave them where it found them. This would throw the entire burden on the mother and allow the father to profit by his own wrong. Another escape would be to hold the father's guilt offsets the mother's, whereby she would be entitled to judgment in full. This would do violence to all those considerations that have led to the recognition of the defense of laches. A third possibility would be to find the parties equally guilty and divide the burden equally, giving the mother judgment for half of the total. This type of solution is unsatisfactory because, first the guilt does not appear equal; the incentive to collect is positive and more dynamic than the negative incentive to assert a sort of anticipatory defense; and when the former is disregarded it is for more cogent reasons and the resulting damage is greater. Second, comparative guilt of this sort is not susceptible of accurate measurement and the books are full of instances where courts have wisely declined to undertake such measurement

A fourth solution was long ago developed by the ecclesiastical courts of England. The rule was stated in DeBlaquiere v DeBlaquiere, 5 Eng. Ecc. R. 126:

Where both parties have long abstained from applying to the court, the one for a reduction of alimony, or the other to enforce the

regular payment, it will not enforce payment of arrears beyond one year prior to the monition, without sufficient cause being shown for the delay.

This has the effect of a statute of limitation. Desirable though it may appear, Ohio has not seen fit to enact a statute of limitation governing actions to collect alimony or child-support, and to invoke such a rule now would look suspiciously like judicial legislation.

However, to arrive at an equitable decision in the instant case it is not necessary to conjure up any sort of rule o' thumb. Since November, 1933, there has been something tantamount to an adoption of the children by the step-father. Had there been a **de jure** adoption the father's responsibility would have been totally transferred to the step-father. (The law of Ohio has not yet progressed to the point of imposing upon a step-father any obligation to support his step-children.)

Yet, although there was no compliance with the adoption law, when the mother and step-father married and took unto themselves the children they formed a new family unit. Without let or hindrance by the natural father (if a father who abandons his own offspring can be termed "natural") this new family has reaped those benefits that would have accrued from a legal adoption. The children became an integral part of the new family; they took the step-father's name. The new parents obtained the privilege of rearing and guiding them; the gratification of watching them develop into boyhood and girlhood; the opportunity of molding future American citizens. They could feel the pride that comes with a boy's manliness, a girl's sweetness; they could glory in the children's achievements. They could know that rarest of delights, the continuous and uninterrupted companionship of the children. They could earn the priceless reward of the children's affection and loyalty.

Hundreds of thousands of people would gladly pay in full for such opportunities and privileges through the adoption of children. To permit this step-father and mother to enjoy the fruits of a **de facto** adoption and escape the legal consequences would be unconscionable; and it would involve requiring a man to support children who no longer in fact belonged to him but solely to their step-father and mother. This the court cannot do.

A strikingly similar conclusion was reached by the New York Court of Appeals in a comparable case:

Swanton v Curley, 7 N. E. 2d, 250; 273 N. Y. 325; Syl. 7. Divorced wife's acquiescence in former husband's omission to contribute to daughter's support for eleven years, and her present husband's voluntary maintenance of such daughter, precluded divorced wife from collecting reasonable sum from former husband under divorce

decree ordering former husband to support daughter by an amount which was left in former husband's discretion.

Syl. 8. Divorced husband who did not contribute anything to daughter's support did not default in obeying divorce decree * * * so as to permit divorced wife to recover * * * where wife's second husband supported daughter gratuitously and without expectation of reimbursement, and daughter had assumed second's husband's name, and divorced husband was not asked to contribute to daughter's support.

By the same token it would be inequitable to allow the father to escape the obligation that accrued against him while the children were still "his" and accessible to him, while the mother was still innocent of laches, and before the **de facto** adoption, to wit, from July 15, 1930 to November 10, 1933. This comprises 174 weeks, totalling $1740.00. Crediting the $167.50 paid under the order, the remainder is $1572.50, for which amount judgment is rendered in favor of Betty Shipley Nicholas against Leo Shipley, and the order is in effect suspended as of November 10, 1933. Any weekly payments that may have been received by her since she reinvoked the jurisdiction of this court by filing this motion should be credited upon the judgment. A journal entry may be prepared accordingly, allowing exceptions to both parties.