KINNEY, APPELLANT, *v.* MATHIAS, APPELLEE.

[Cite as Kinney *v.* Mathias (1984), 10 Ohio St. 3d 72.]

(No. 83-1010—Decided April 11, 1984.)

*Messrs. Hanna & Hanna* and *Mr. Drew A. Hanna,* for appellant.
*Mr. John S. Cheetwood* and *Ms. Pamela A. Heringhaus,* for appellee.

*Per Curiam.* The sole issue presented by this case is whether the court of appeals erred in finding that the trial court's holding denying Mathias the defense of laches was clearly against the manifest weight of the evidence. This court concludes that the judgment of the trial court was supported by competent, credible evidence and, therefore, the court of appeals erred in reversing that judgment.

The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. *Landis* v. *Kelly* (1875), 27 Ohio St. 567; *State, ex rel. Shady Acres Nursing Home, Inc.,* v. *Rhodes* (1983), 7 Ohio St. 3d 7. Moreover, if the judg-

ment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]; *State, ex rel. Shady Acres Nursing Home, Inc., supra.*

The test for laches in the present situation was set forth by this court in *Smith* v. *Smith* (1959), 168 Ohio St. 447 [7 O.O.2d 276], at paragraph three of the syllabus: "Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." Additionally, as was noted in *Smith,* at 455, during the delay in the assertion of rights the complainant must have had knowledge or notice of the defendant's conduct and have been afforded an opportunity to institute suit.

There is substantial disagreement in the evidence of the present case regarding both the issue of an opportunity to bring suit and the question of prejudice. Kinney asserts that Mathias concealed his location so that she would not be able to find him by not revealing his changes of address when he moved. Mathias responds that he made no effort to hide, that Kinney knew he lived in Milwaukee, that she could have located his whereabouts through General Electric, his employer, and that she had engaged in several communications with him regarding the question of the children's adoption. Thus, Mathias concludes that Kinney had ample opportunity to sue him. The court of appeals agreed and characterized Kinney's delay as having no acceptable explanation.

Resolution of the issue of whether Kinney indeed had an opportunity to assert her rights is a factual question. It is undisputed that Mathias failed to notify Kinney of his new address after each of his moves or even of the fact that he had moved. The evidence is in dispute over whether Kinney eventually learned that Mathias was living in Milwaukee. The testimony is at loggerheads over whether there was ever any discussion of Gary Kinney's adoption of the two children. Mathias has been unable to produce any evidence of the letters or records he claims resulted from these communications. As for inquiring of Mathias' employer, the last document from the Massachusetts action filed with the lower court stated that Mathias no longer worked for General Electric.

Evaluation of the evidence on this question is for the trier of fact. It is obvious to this court that there was competent, credible evidence upon which to conclude that Kinney lacked an opportunity to bring suit to enforce her rights. The court of appeals was in error when it concluded that her delay had no acceptable explanation.

Likewise, there is conflicting evidence as to whether the delay in bringing suit materially prejudiced Mathias. Mathias argues that the lapse of nine years, the children's use of the Kinney name, the discussion of adoption, and his change of financial position by remarrying twice and having additional

children in reliance thereon creates a substantial prejudice if the trial court's judgment is allowed to stand. The court of appeals concluded that Kinney deliberately led Mathias to believe that the children had been adopted, that Mathias had made every effort to determine if an adoption had occurred, that it would have been easier to make the periodic support payments than to pay a lump sum, and that the long delay may have caused Mathias to lose his records of the alleged adoption agreement.

In response to these contentions, it is apparent that length of time alone is not sufficient to constitute a material prejudice. *Smith* v. *Smith, supra.* It is also well-established that the changing of a child's surname does not relieve a natural father of his duty to support his children. *In re Russek* (1974), 38 Ohio App. 2d 45 [67 O.O.2d 260]; *Dolgin* v. *Dolgin* (1965), 1 Ohio App. 2d 430 [30 O.O.2d 435]; *Logan* v. *Logan* (1960), 111 Ohio App. 534 [13 O.O.2d 364]. Moreover, "[t]he mere inconvenience of having to meet an existing obligation imposed * * * by an order or judgment of a court of record at a time later than that specified in such * * * order cannot be called material prejudice." *Smith, supra,* at 457. It is therefore clear that these assertions of hardship falling upon Mathias are, as a matter of law, insufficient to rise to the level of prejudice necessary to invoke the doctrine of laches.

As for the remainder of the claims of prejudice put forth by Mathias or by the court of appeals, all rest upon the resolution of a factual question to which the record reveals conflicting testimony. There is sufficient competent, credible evidence to enable the trial court to determine against Mathias on whether there ever was an adoption agreement, or any records thereof, and whether Kinney deliberately misled him to his detriment. The trial court was thus justified in making the specific finding that "* * * because Defendant failed to advise Plaintiff of his residence address and because of his sporadic compliance with this Court's order prior to leaving Ohio, he is denied the defense of laches."

Finally, Mathias contends that the present case is indistinguishable from the cases of *Beiter* v. *Beiter* (1970), 24 Ohio App. 2d 149 [53 O.O.2d 361], and *In re Shipley* (J. C. 1942), 38 Ohio Law Abs. 181 [26 O.O. 217], where the courts held that the wives had acquiesced in their former husband's failure to make support payments and were thus guilty of laches. However, in *Beiter* the trial court had categorically refused to allow evidence of an agreement to modify the support payments, the delay involved eighteen years, plaintiff knew her former husband's whereabouts at all times, and there were no trial court findings to be overturned as against the material weight of the evidence. As such *Beiter* is clearly distinguishable from the present case. *In re Shipley* is of questionable precedential value as its affirmance by the Court of Appeals for Lucas County was the conflicting case in a certification of conflict when this court decided *Smith* v. *Smith, supra.* This court upheld the court of appeals in *Smith,* thus impliedly overruling the court of appeals in *In re Shipley.* Consequently, this argument is without merit.

It is clear that the present case involves evidentiary disputes on several key points. All involve factual questions for the trier of fact to determine. On each controverted issue there was competent, credible evidence presented which supported the trial court's findings. It was therefore improper for the court of appeals to reverse those findings as clearly against the manifest weight of the evidence. The judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, GREY, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., concurs in judgment only.

GREY, J., of the Fourth Appellate District, sitting for LOCHER, J.