OPINION
Plaintiff-appellant, Butler County Child Support Enforcement Agency ("CSEA"), on its own behalf and on behalf of the state of Ohio and Wanda Stump aka Gina Dellagrazi, appeals an entry of the Butler County Court of Common Pleas, Domestic Relations Division. The entry adopted a magistrate's decision finding that CSEA did not establish child support arrearage amounts allegedly owed by defendant-appellee, Roger Stump, and ordering CSEA to locate Wanda Stump before collecting any arrearages owed to her.
Roger and Wanda Stump were divorced on April 27, 1973. They had two children at the time of the divorce, Melissa, born October 11, 1967, and Stephanie, born July 20, 1971. Wanda was given custody of the children, and Roger was ordered to pay $40 per week in child support. On June 17, 1974, the child support obligation was increased to $50 per week.
Wanda received benefits from the state of Ohio on behalf of her daughters. The state was compensated by means of an assignment of Wanda's right to support. Records of the benefit payments and Roger's child support payments were kept by the Support Desk, Adult Probation Department, Butler County Courthouse, and later by the Bureau of Support under the auspices of the Butler County Domestic Relations Court. After CSEA was formed, it assumed collection and enforcement responsibilities.
Melissa turned eighteen on October 11, 1985. At that time, Roger unilaterally cut his support payments in half. He paid one half of the ordered support until Stephanie turned eighteen on July 20, 1989. At that time, he stopped paying child support, considering Stephanie to be emancipated. Neither Wanda nor CSEA sought to collect any arrearages at that time.
In 1997, CSEA concluded that Roger owed substantial arrearages, and sent the matter to a private enforcement agency to institute a collection action. Roger requested an audit, and the matter was referred back to CSEA. The CSEA audit concluded that Roger owed arrearages of $12,303.80. On June 5, 1998, an advance notice of default was served upon Roger. The notice asserted that his support obligations terminated on Stephanie's twenty-first birthday. On June 7, 1998, Roger sent a letter to CSEA asserting that he did not owe any arrearage, that he was never given notice of any arrearage, and that he had made all of the 1973 and 1974 payments which CSEA contended he did not make.
A CSEA administrative hearing was scheduled, with notice sent to Roger and Wanda. The notice to Wanda was returned as undeliverable. CSEA's efforts to find her were unsuccessful. The administrative hearing was held on June 16, 1998. The hearing officer found that Roger raised questions concerning the date on which the children were emancipated, why the enforcement action was not instituted at an earlier time, and why there were no records of payments prior to June 21, 1974. Nonetheless, the hearing officer recommended that the arrearage remain at $12,303.80, with $6,295.97 due Wanda and $5,515.43 due CSEA and the state of Ohio. The copy of the recommendation sent to Wanda was returned as undeliverable.
On August 6, 1998, Roger requested a judicial mistake of fact hearing in the trial court. A hearing before a magistrate was scheduled for August 27, 1998, and notice was sent to the parties. The notice to Wanda was returned as undeliverable. On August 27, 1998, the hearing was continued by the magistrate. The magistrate ordered that the CSEA prosecuting attorney, who represented CSEA and the state of Ohio, be present. The copy of the continuance sent to Wanda was returned as undeliverable.
On November 9, 1998, the prosecuting attorney, Roger, and Roger's counsel appeared. After Roger presented arguments, the prosecuting attorney requested a continuance because CSEA's witness failed to appear. The request was denied, but the prosecuting attorney was allowed to file a post-hearing memorandum responding to Roger's arguments. No testimony was taken at the hearing. On December 4, 1998, the prosecutor's memorandum was filed. The memorandum included a contention that R.C.3113.21(B)(4), governing the judicial mistake of fact hearing, was unconstitutional because it failed to afford child support obligees due process.
On December 16, 1998, the magistrate filed her decision. The magistrate found that the CSEA's audit reflected no payments made by Roger prior to June 21, 1974. However, CSEA received every payment after that time until Roger cut his payments in half when Melissa turned eighteen. The reduced payments continued until Stephanie's eighteenth birthday. Roger heard nothing from CSEA until almost ten years after he stopped making payments, and there was no proof of an arrearage due the state, as no representative of CSEA appeared to testify.
The magistrate found that CSEA incorrectly alleged that the children were emancipated upon their twenty-first birthdays. The support should have continued only until Stephanie was either eighteen or graduated from high school. CSEA and the state were barred by laches from collecting any arrearage from 1973 and 1974. Twenty-five years had passed without Wanda or CSEA making any demand for alleged unmade payments. Roger was materially prejudiced by this delay because any substantiating evidence he may have had in 1973 and 1974 had long since been destroyed.
The magistrate found that Roger was not prejudiced as to any arrearage which accrued after Melissa's eighteenth birthday, when he unilaterally quit paying one half of the ordered child support. According to the original decree, the payments were to continue in full amount until Stephanie was emancipated. Roger did not contend that he made payments after October 1985 which were not reflected in the CSEA audit, and thus he would not suffer any prejudice.
The magistrate found that R.C. 3113.21(B)(4) was not unconstitutional. The magistrate found that due process attaches when the state seeks to deprive one of life, liberty, or property, and that the statutory advance notice to be provided to obligors of default is notice of potential action which the state may take. As no action is being taken against the obligee, and as the amount of the default is not set until adopted by the court, the due process rights of the obligee are not implicated by the advance notice. Additionally, the obligee is given notice once the court adopts an arrearage amount and may then appeal. The magistrate noted that Wanda could not be successfully located at the time of the hearing.
Based upon these findings and conclusions, the magistrate found that Roger's arrearage was zero as of October 4, 1985. CSEA was ordered to conduct an investigation within ninety days to determine whether Stephanie was still in high school on her eighteenth birthday, July 20, 1989. If she was in high school, CSEA was ordered to determine the arrearage from October 4, 1985 until Stephanie's graduation at the rate of $50 per week. If she had graduated, or if CSEA could not determine her high school status, then the support order was to terminate on her eighteenth birthday. Because any arrearage due CSEA was not established, any arrearage would be due only to Wanda, but it could not be collected until her whereabouts became known.
On December 29, 1998, the prosecuting attorney filed objections to the magistrate's decision. The trial court heard arguments from both the prosecuting attorney and Roger, and on February 25, 1999, the trial court filed an entry affirming the magistrate's decision.
CSEA appeals, raising seven assignments of error. At the outset, we must comment on the lack of clarity in the brief filed by CSEA. It is unclear on what party's behalf any given argument is made. More important, the brief contains arguments which are wholly inconsistent. In some assignments of error, it seems that the state is raising an issue for review, yet in other assignments of error, it is claimed that the state is not a party to this action. Furthermore, some assignments of error ask this court to declare R.C. 3113.21(B)(4) unconstitutional, but other assignments of error ask this court to enforce the literal terms of that same statute.
Assignment of Error No. 1:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE STATE'S MOTION FOR CONTINUANCE.
In its first assignment of error, CSEA contends that the trial court should have granted it a continuance because not all necessary parties were present at the magistrate's hearing. CSEA argues that, as a result, it and the state were prevented from providing evidence proving their claims.
A trial court's decision denying a party's motion for a continuance will not be reversed absent an abuse of discretion.State v. Moore (1998), 81 Ohio St.3d 22, 28. "Abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
In the instant case, CSEA initiated the action against Roger and was represented by the prosecuting attorney, who also represented the state. The trial court initially continued the case from August 27, 1998 to November 9, 1998 so that the prosecuting attorney could be present and prepared on behalf of CSEA and the state. As CSEA was the complaining party, it had no reason to not have a representative appear to testify at the hearing. The trial court's notice of the continuance provided notice to the state of the action, even though the prosecuting attorney should have been aware of the proceedings.
Nor may CSEA or the prosecuting attorney complain that they had no notice that the decision of the administrative hearing officer could be altered or reversed by the magistrate. R.C.3113.21(B)(4) expressly provides for such action.[1] The magistrate had before her the arguments of the parties and the action of the administrative hearing officer. CSEA and the state were fully aware of the arguments Roger would make, as he had made these arguments in the administrative hearing.
We find that the trial court did not abuse its discretion in overruling CSEA's motion for a continuance. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE STATE AND OBLIGEE BY BASING ITS DECISION ON ASSUMPTIONS WHICH WERE BASED ON NEITHER SWORN TESTIMONY NOR OTHER SWORN EVIDENCE IN THE RECORD.
In its second assignment of error, CSEA contends that the magistrate based her decision upon facts and assumptions not present in the record.
An independent review of the limited record[2] and the magistrate's decision makes clear that the magistrate did not make her decision based upon facts and assumptions not in the record. It should not need mention that the function of the magistrate is to weigh the evidence and arguments of the parties, drawing inferences where necessary to make a decision. The magistrate fully discussed the reasons for her decision, noting the inferences she drew from the record and how she resolved issues of credibility. The magistrate did not abuse her discretion by finding CSEA's claims unsupported by the record.
CSEA argues that the magistrate was required to accept the CSEA audit of Roger's alleged arrearages because the parties stipulated to the audit. It is clear that the parties stipulated to the audit's authenticity, not its accuracy. The audit's accuracy and the arrearages which it disclosed were the central dispute in the case. The magistrate did not question the authenticity of the audit. She was not required to accept claimed arrearages if she did not find it to be a credible and accurate accounting.
We find that the magistrate did not abuse her discretion in weighing the credibility of the parties' arguments and the CSEA audit. The trial court did not err in rejecting objections to the magistrate's decision. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE MAGISTRATE EXCEEDED THE LIMITED SCOPE OF A JUDICIAL MISTAKE OF FACT HEARING.
In its third assignment of error, CSEA contends that the magistrate exceeded the scope of a judicial mistake of fact hearing as defined in R.C. 3113.21(B)(4). CSEA argues that the magistrate decided more than what arrearages were owed.
R.C. 3113.21(B)(4) states that the judicial mistake of fact hearing is limited to determining "whether there is a mistake of fact in the advance notice or the corrected advance notice." "Mistake of fact" is defined as "an error in the amount of current or overdue support or in the identity of the alleged absent parent." Ohio Adm. Code 5101:1-30-41.1(E)(2). As is clear in the above sections, in a judicial mistake of fact hearing, the magistrate may determine only if the administrative hearing officer erred in resolving factual issues regarding the advance notice or corrected advance notice given to the obligor.
In the instant case, the magistrate did nothing more than determine that there were factual errors regarding the amount of overdue support which CSEA claimed Roger owed. The factual issues decided by the magistrate were no different from those noted by the administrative hearing officer: the date on which the children were emancipated; why the enforcement action was not instituted at an earlier date; and why there were no records of Roger's payments prior to June 21, 1974. These were questions which the administrative hearing officer made no attempt to address.
The magistrate did nothing more than correct the administrative hearing officer's failure to resolve these issues. R.C.3113.21(B)(3) states:
 At the [administrative] hearing, the child support enforcement agency shall determine whether a mistake of fact was made in the advance notice. If it determines that a mistake of fact was made, the agency shall determine the provisions that should be changed and included in the advance notice accordingly.
 From a review of the limited record provided to this court, it is clear that the administrative hearing officer recognized that Roger raised serious questions regarding essential facts underlying CSEA's contention that he was in arrears. It appears that the administrative hearing officer failed to address these questions, instead perfunctorily adopting the amount alleged by CSEA. In finding that CSEA was barred from collecting any arrears owed it and from collecting arrears which may be due Wanda until she could be found, the magistrate did nothing more than correct the administrative hearing officer's failure to fulfill his duties.
We find that the magistrate did not exceed the scope of the review to be conducted in a judicial mistake of fact hearing. The third assignment of error is overruled.
Assignment of Error No. 4:
 THE MAGISTRATE ERRED IN FINDING THAT THE CSEA AND STATE FAILED TO PROVE ANY STATE'S ARREARAGES, AND THEREFORE, THAT ALL ARREARAGES ARE OWED TO APPELLANT.
In its fourth assignment of error, CSEA contends that the magistrate's decision placed an improper burden of proof upon CSEA and the state when proving what arrearages were due to them. CSEA asserts that the parties stipulated to the CSEA audit, and that the trial court's decision should have been based solely upon the amount owed included in the audit.
We have previously addressed the parties' stipulation to the audit, and the magistrate was allowed to judge the accuracy of the audit in light of the lack of proof provided by CSEA and the prosecuting attorney. The magistrate did not abuse her discretion by finding the audit not supported by the record, especially in light of the questions raised by Roger.
The magistrate did not place upon CSEA and the state the evidentiary burdens that CSEA asserts were imposed. CSEA contends that it was required to prove that Wanda assigned her rights of collection to CSEA. Nothing in the magistrate's decision questions that Wanda assigned her right to enforce the child support orders. Instead, the magistrate discussed the factual issue of whether the audit's alleged arrearage amounts were justified. This issue was properly considered in the judicial mistake of fact hearing.
The magistrate did not err in finding that CSEA and the state failed to prove the claimed arrearages. No records from 1973 and 1974 were provided to substantiate the contention that Roger did not make payments in those years. CSEA used the wrong emancipation dates for terminating the support obligations, an error the magistrate corrected. The magistrate found that the period of time which CSEA and the state waited to enforce the support obligations was so long that Roger was prejudiced.
We find that the magistrate did not err in finding that CSEA failed to prove any arrearages owed to it. The fourth assignment of error is overruled.
Assignment of Error No. 5:
 ORC 3113.21(B)(4) IS UNCONSTITUTIONAL, AS IT DENIES AN OBLIGEE THE EQUAL PROTECTION OF THE LAW.
In its fifth assignment of error, CSEA contends that R.C. 3113.21(B)(4), which provides the notice requirements and procedure for judicial mistake of fact hearings violate its and Wanda's right to equal protection. CSEA claims that the statute precludes child support obligees from challenging the CSEA's calculation.
As noted by the trial court, a child support obligee does have sufficient recourse to protect her right of collection. The rights of the obligee are not implicated until the trial court adopts an amount due by the obligor. At that time, the obligee and/or her assigns may object to that amount and accordingly appeal the trial court's decision. Thus, the obligee's rights are appropriately protected, and the statute does not preclude the obligee from challenging the amount of arrearages determined by the trial court. The fifth assignment of error is overruled.
Assignment of Error No. 6:
 ORC 3113.21(B)(4) IS UNCONSTITUTIONAL IN THAT IT VIOLATES THE DUE PROCESS RIGHTS OF THE OBLIGEE, AND IMPLICITLY, HER ASSIGNS.
In its sixth assignment of error, CSEA argues that R.C. 3113.21(B)(4) is unconstitutional because it violates the due process rights of child support obligees. CSEA asserts that the statute deprives them of proper service of process, and that this failure prevented the state from becoming a named party in the action.
Again, we point out the inconsistency of CSEA's arguments. In previous assignments of error, issues were presented as if the state were a party to this action. Now, CSEA wants this court to believe the state is not a party. We advise CSEA, the state, and the prosecuting attorney to communicate with one another in the future, as to what entity or entities should initiate support collection actions.
The magistrate fully discussed this issue. No state action is being taken against the obligee's rights at the time that the advance notice is given to the obligor. Nor is any state action being taken against the obligee's rights when the obligor requests an administrative hearing. This is especially the case where the obligee is CSEA. In this case, CSEA points out on many occasions in its brief that it is an obligee. As noted by the magistrate, until a court adopts an amount as being due, there is no action taken with regard to the rights of the support obligees. Only at that time are they entitled to notice of the court's action, and they may then appeal that action.
CSEA and the state cannot claim that they had no notice of Roger's challenge to the administrative hearing officer's decision or the bases of his challenge. CSEA initiated these proceedings against Roger on its own behalf, as well as on behalf of Wanda and the state. Roger's challenges to the audit were raised in the CSEA administrative hearing. The prosecuting attorney is the counsel of record empowered to prosecute CSEA and the state's claims. More importantly, the prosecuting attorney, and therefore the state, were notified by the court of the proceedings more than two and one half months in advance of the judicial mistake of fact hearing. The prosecuting attorney did not give any reason for being unable to communicate with her own clients during that time.
We find that R.C. 3113.21(B)(4) does not violate the due process rights of child support obligees. The sixth assignment of error is overruled.
Assignment of Error No. 7:
 THE MAGISTRATE ERRED IN APPLYING THE DEFENSE OF LACHES, AS IT WAS NOT PROPERLY BEFORE THE COURT, WAS NOT AVAILABLE TO APPELLEE, AND BECAUSE THERE WAS NO EVIDENCE IN SUPPORT OF THE FINDING OF PREJUDICE TO APPELLEE.
In its seventh assignment of error CSEA contends that the magistrate erred in considering whether laches barred CSEA and the state from collecting any arrearages which may be owed them. CSEA argues that the trial court made findings beyond those allowed by R.C. 3113.21(B)(4).
This court must again note the incongruity of the state's arguments. In the previous two assignments of error, CSEA asked this court to declare R.C. 3113.21(B)(4) unconstitutional. Now, as in the second assignment of error, CSEA urges this court to enforce the literal terms of the statute.
Although R.C. 3113.21(B)(4) and Ohio Adm. Code5101:1-30-41.1(E)(2) do not specifically mention laches as an issue to be addressed at the CSEA administrative hearing or in the judicial mistake of fact hearing, the application of laches may be reasonably inferred as an issue to be determined in these proceedings. Under the statutory and administrative authorities, the hearing officer or reviewing court must determine if there is an error "in the amount of overdue support or identity of the alleged absent parent." Id. Since the amount of overdue support is factual issue in such proceedings, the application of laches, which could result in a finding that there is no overdue support which can be collected, is a proper consideration when determining if there is any mistake as to the amount due in the advance notice.
Laches is an omission to assert a right for an unreasonable period of time, without explanation, which results in material prejudice to the adverse party. State ex rel. Wean United, Inc.v. Indus. Comm. (1993), 66 Ohio St.3d 272, 275. During the delay in the assertion of rights, the complainant must have knowledge or notice of the adverse party's conduct and have had opportunity to institute suit. Kinney v. Mathias (1984), 10 Ohio St.3d 72, 74. The determination of whether laches is applicable in a given case as well as of the weighing of evidence are factual determinations.Id. Application of the doctrine of laches is within the sound discretion of the trial court. Allen v. Allen (1990), 62 Ohio App.3d 621,624. Nonetheless, the general rule is that laches can be imputed against neither the state generally, Ohio State Bd. ofPharmacy v. Frantz (1990), 51 Ohio St.3d 143, paragraph three of the syllabus, nor the CSEA when attempting to recover payment for back child support. State ex rel. Scioto Cty. v. Gardner (1996),113 Ohio App.3d 46, 57.
The facts of this case do not fall within the Frantz rule. In Frantz, the Board of Pharmacy waited six years before taking action against the defendant for unprofessional conduct. During that time, the defendant was well aware of the possibility that action could be taken against him at any time. In the instant case, CSEA waited twenty-five years before taking action against Roger. In that time, Roger's children had become emancipated, and all records Roger had indicating that he had made the support payments were destroyed. More important, CSEA has no records demonstrating that Roger did not make his support payments twenty-five years ago. The inaction of CSEA in this case is unconscionable, both in its prejudice to Roger and its disregard of its responsibility to Wanda and her children. As such, the CSEA's irresponsibility is far beyond anything conceived of in theFrantz rule.
We find that the magistrate did not err in applying the defense of laches to prohibit CSEA from collecting any arrearages which it may be due. The seventh assignment of error is overruled.
Assignment of Error No. 8:
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY RESTRAINING THE CSEA FROM COLLECTING ANY ARREARAGES UNTIL APPELLANT IS LOCATED.
In its final assignment of error, CSEA contends that the magistrate was precluded from ordering that CSEA could not collect the arrearages due Wanda until she could be located. CSEA argues that Roger, not CSEA, should be responsible for locating Wanda.
CSEA, entrusted with enforcing Wanda's rights, was so unconcerned about her rights that it did not investigate Roger's apparent arrearage for twenty-five years, and failed to keep in contact with Wanda for at least ten years. CSEA now argues that, although it failed to fulfill its own duties, Roger must alleviate CSEA's irresponsibility.
As pointed out by CSEA, R.C. 2301.36(A) provides:
 Upon issuing or modifying a support order, * * * the court shall require that support payments be made to the division of child support in the department of human services as trustee for remittance to the person entitled to receive payments.
CSEA argues that the magistrate's order restrains it from undertaking its collection obligations imposed by R.C. 2301.36(A). Although we commend CSEA for finally deciding to undertake its obligations to Wanda — after twenty-five years of refusing to do so — we find that the magistrate's decision was not an abuse of discretion. CSEA failed to maintain any contact with Wanda and failed to take any action protecting her or her children's interests for twenty-five years. Until CSEA can demonstrate that it is at least able to locate Wanda and her children, the primary obligees of the support payments, and fully protect their interests, CSEA should not be allowed to collect payments from Roger.
We find that the magistrate did not abuse her discretion in ordering that CSEA may collect back child support payments due Wanda only upon its discovering her whereabouts. The eighth assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.
[1] R.C. 3113.21(B)(4) provides:
 If, within seven days after the agency [CSEA] makes its determinations under division (B)(3) of this section [providing for an administrative hearing] the obligor files a written motion for a court hearing to determine if a mistake of fact still exists in the advance notice or the corrected advanced notice, the court shall hold a hearing on the request as soon as possible, but no later than ten days, after the request is filed. If the obligor requests a court hearing, no later than five days before the date on which the court hearing is to be held, the court shall send the obligor and the obligee written notice by ordinary mail of the date, time, place, and purpose of the court hearing. The hearing shall be limited to a determination of whether there is a mistake of fact in the advance notice or the corrected advance notice.
[2] The record consists of the parties' briefs, the decisions of the magistrate and trial court, and the prosecuting attorney's App.R. 9 statement. No transcript of the lower court proceedings, or motions or memorandums have been provided.