DECISION AND JUDGMENT ENTRY
The Jackson County Child Support Enforcement Agency ("JCCSEA") appeals the Jackson County Court of Common Pleas' decision finding that Stephen Murray Weber ("Father") owes no child support arrearages. The JCCSEA contends that the trial court erred in retroactively modifying Father's support obligation. Because Father never filed a motion to modify his child support obligation, and because R.C. 3113.21(M) prohibits the retroactive modification of child support before the date upon which a motion for modification is filed, we agree that the trial court erred in retroactively lowering Father's obligation. Additionally, the JCCSEA asserts that the trial court erred in ruling that Brenda Jean Weber ("Mother") and the JCCSEA waived any right to collect support arrearages from Father by failing to seek to enforce the support order at an earlier date. Because, as a matter of law, Father was not prejudiced by the delay in enforcement, we agree. Accordingly, we reverse the judgment of the trial court.
 I.
The Webers (Mother and Father) divorced in 1983. The divorce decree granted Mother custody of their four children, and ordered Father to pay child support in the amount of eighty dollars per week. The support decree did not include a wage withholding order. Instead, Father made his support payments to the JCCSEA weekly via direct withdrawal from his bank account.
At some point prior to the emancipation of any of the children, Mother consulted an attorney regarding whether she should seek a modification of Father's child support obligation. Mother's attorney informed her that, because of her salary, a motion for modification of support would probably cause the court to reduce Father's obligation.
Upon emancipation of the parties' oldest child, Father unilaterally arranged with the bank to reduce his payments to sixty dollars per week. Additionally, the JCCSEA filed an affidavit with the court seeking to "provide the Court with information necessary to terminate the child support due for one of the minor children due to emancipation." Mother did not object to Father's unilateral reduction of support. On June 10, 1993, the court issued an order adjusting Father's support from eighty dollars per week to sixty dollars per week.
Upon emancipation of the parties' second child in June 1994, the JCCSEA sent both Mother and Father a "Notice of Termination." Father stated he received the notice despite the fact that he had changed his address without notifying the JCCSEA, because his mail carrier is familiar with both his former and current addresses. The notice stated in part:
 You are advised that the emancipation of one of the minor children of the parties may be a reason for adjustment of the current child support obligation, however, one of the parties to this case must request a review in order to determine if an adjustment in the child support obligation is warranted. Enclosed is a notice * * * which explains the administrative review process necessary to adjust the child support obligation.
* * *
 No court order will be issued from this action because the child support obligation will not be changed.
Despite this language, Father unilaterally reduced his support payment by requesting the bank to forward only forty dollars per week to the JCCSEA. Father did not file any motion with the court seeking to modify the court order establishing his obligation. Mother did not object to Father's reduction of his support payments.
Upon emancipation of the parties' third child in June 1995, the JCCSEA sent a notice of termination containing language identical to that quoted above to Mother and to Father at Father's former address. Father received the notice, though he still had failed to notify the JCCSEA of his new address. Again, Father unilaterally reduced his payment by twenty dollars, and again mother did not object. Mother did not consult an attorney with regard to the reductions.
From June 1993 through May 1998, when the parties' fourth and youngest child became emancipated, Father's court-ordered child support obligation remained sixty dollars per week. Thus, from the time Father began unilaterally reducing his support payments in June 1994, he began to incur arrearages. In 1996, 1997, and 1998, the JCCSEA allegedly submitted Father to the Internal Revenue Service's "tax offset program," in order to withhold his income tax refund to pay his arrearages.[2] Father contends that he never received the notices the JCCSEA sent with regard to the tax offset program, though the JCCSEA stated that it sent the notices to the only address they had on file, the same address where it sent the termination notices that Father received prior to each of his unilateral reductions in support. Father did not present any evidence regarding whether he received income tax refunds those years, but the JCCSEA did not receive any withholdings.
Upon emancipation of the parties' fourth child, the JCCSEA sent Father and Mother a notice of termination (dated May 11, 1998) which informed Father that it would seek an order of the court terminating his child support obligation, but that his case would not be closed due to the $7,545.59 arrearage on his account. The JCCSEA further informed Father that it would seek an order requiring arrearage payments in the amount of fifty dollars per week.
Father filed a motion on May 22, 1998 seeking the court to declare that he owed no arrearages. On May 29, 1998, the court issued a notice scheduling an evidentiary hearing regarding arrearages on child support.
The court held the evidentiary hearing on arrearages on October 30, 1998. At the hearing, Mother testified that "the little amount that he does owe, I'm not trying to get it," but stated that the money would be helpful to her children, whom she felt were entitled to it. The attorney for the JCCSEA noted for the record that she did not represent Mother, but only represented the JCCSEA.
After the JCCSEA filed two motions seeking immediate resolution of this matter, the court issued a decision on March 19, 2001. In its decision, the court found that there was "no controversy" before it because: (1) Mother's "actions, or lack thereof" and testimony indicated she did not want the money; (2) the JCCSEA had no interest in the money because the children had never received any state aid; and (3) the children themselves were never joined as parties to the action. Additionally, the court found that the JCCSEA failed to present evidence that it took any action to enforce Father's obligation, such as proof that it submitted Father to the IRS tax offset program.
Although the court found "no controversy," it nonetheless considered the JCCSEA's and Father's arguments and made findings of fact and conclusions of law with respect to those arguments. Specifically, the court found that Mother and the JCCSEA had failed to make any attempts to collect arrearages from Father, and that this inaction deprived Father of the ability to dispute any claim that he was incurring arrearages. The court then granted Father's motion and ruled that Father owed no arrearages.
The JCCSEA appeals, and asserts twelve assignments of error. In the interest of clarity, we summarize those assignments of error as follows:
The trial court erred in ruling that the JCCSEA was not a party in interest with standing to contest Father's motion to declare that he owed no arrearages.
The trial court erred in retroactively modifying Father's child support obligation in order to eliminate his arrearages.
The trial court erred in ruling that latches barred Mother and/or the JCCSEA from enforcing Father's child support obligation.
 II.
In a domestic relations case, a trial court must have the discretion to do what is equitable based upon the facts and circumstances of the particular case. Briganti v. Briganti (1984), 9 Ohio St.3d 220; SciotoCty. Child Support Enforcement Agency v. Gardner (1996),113 Ohio App.3d 46. A reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court abused its discretion. Focke v. Focke (1992), 83 Ohio App.3d 552. The term "abuse of discretion" connotes more than an error in law or judgment; it implies that the courts attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court, but must be guided by the presumption that the findings of the trial court are correct. Inre Jane Doe (1991), 57 Ohio St.3d 135.
 III.
The JCCSEA first asserts that the trial court erred in finding that the JCCSEA has no interest in this matter and that "no controversy" exists. The trial court made these findings based upon (1) the JCCSEA attorney's statement that she did not represent Mother, (2) Mother's statement that she did not want Father's money, and (3) the fact that the children never received state monies and were not themselves parties to this action.
In Cuyahoga Support Enforcement Agency v. Lovelace (Dec. 7, 1995), Cuyahoga App. Nos. 68708 and 68709, unreported, the court stated:
 R.C. Chapter 3111, when viewed in its entirety, makes clear that regardless of whether a child receives public assistance, "the state continues to maintain a pecuniary interest in seeing that child support is paid by the parent/obligor and paid in the proper amount." Cuyahoga Support Enforcement Agency v. Lozada (Jul. 10, 1995), Cuyahoga App. Nos. 67463, 67553, 67639, 67654, 67659, unreported. In other words, Ohio's statutes require support payments to be forwarded to the appropriate CSEA by the parent/obligor even if a child is not receiving public assistance. See, R.C. 3111.28 and 3113.06. The CSEA, in turn, disburses the proper amount to the parent/obligee. The CSEA consequently possesses a legitimate governmental interest in assuring that all
parent/obligors satisfy all child support orders. Id.; see, Carelli v. Howser (1991), 923 F.2d 1208
(state has legitimate governmental interest in enforcing all child support orders, in part, to protect the public fisc).
The court agreed in Benzinger v. Benzinger (Feb. 7, 1996), Hamilton App. Nos. C-940974 and C-940990, unreported, holding:
 From a thorough reading of R.C. Chapters 3111 and 3113, together with the mandates of Title IV-A and Title IV-D of the Social Security Act, we find that the General Assembly intended that the child support enforcement agencies be parties to all actions for the collection of child support; any other result would hinder the legitimate state interest spelled out by the General Assembly for the enforcement of child support orders as well as the mandates of Title IV-A and Title IV-D.
Thus, to the extent that the trial court found that there was no controversy before it or that the JCCSEA did not have standing to seek to collect Father's arrearages, the court erred. However, we note that in the decision and judgment entry, the trial court considered the JCCSEA's and Father's substantive arguments. It did not simply dismiss the matter as moot. Rather, the court considered whether Father owes arrearages and whether the JCCSEA and Mother should be barred from collecting arrearages based on latches. Additionally, the court ruled upon the motion by granting it rather than dismissing it.
Because the trial court considered the arguments of the parties and ruled upon Father's motion, we find that the trial court's statements regarding the propriety of the JCCSEA's involvement in this case are merely dicta. Based upon the trial court's conclusions of law and entry, we find that the trial court properly treated the JCCSEA as a party in interest in this matter.
 IV.
The JCCSEA next asserts that the trial court erred in retroactively modifying Father's child support obligation. Pursuant to R.C.3113.21(M),[3] a court may not retroactively modify a support order, except to the date that the petition for modification was filed. R.C.3113.21(M), as it existed at the time of the court's ruling, provides:
 (3) Except as provided in division (M)(4) of this section, a court may not retroactively modify an obligor's duty to pay a delinquent support payment.
 (4) A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.
(Emphasis added.) See, also, McPherson v. McPherson (1950),153 Ohio St. 82; Lytle v. Lytle (1998), 130 Ohio App.3d 697, 702; Jonesv. Brister (Aug. 6, 2001), Lawrence App. No. 00CA44, citing Hamilton v.Hamilton (1995), 107 Ohio App.3d 132, 139.
In Lytle v. Lytle, the original court order for child support of a non-custodial father's four children ordered support on a per-child basis. 130 Ohio App.3d at 700. However, after the father took custody of one of the children, the revised child support order did not specify whether the adjusted support payments the father owed were per-child oren gross. Id. When the father gained custody of a second of the four children, the father unilaterally lowered his child support payments on a "per-child" basis. Id.
The Lytle court ruled that when a trial court creates a support order and does not specifically state that the support is charged on a per-child basis, the order constitutes an en gross order. Id. at 701. Therefore, the court concluded that the father incurred arrearages when he unilaterally lowered his payments on a per-child basis. Id. at 702. The court further held that it could not retroactively adjust the father's arrearages, because the father failed to timely file a motion to modify the support order. Id.
As in Lytle, the support order in this case did not state that it calculated the amount of support owed on a per-child basis, and hence the support order was en gross. Thus, pursuant to Lytle and R.C. 3113.21(M),
the trial court erred in accepting Father's unilateral, per-child reduction in support and in retroactively adjusting Father's obligation so that he owed no arrearages.
Father argues that the court did not retroactively modify his child support obligation, but rather that the parties reached a de facto
agreement, which the trial court merely enforced. In support of his position, Father cites Beiter v. Beiter (1970), 24 Ohio App.2d 149, 150, for the proposition that an agreement between a husband and wife "subsequent to and different from the order of the court will be binding upon the wife in an action by her to recover unpaid installments of the court's support and/or alimony award."
Despite Beiter, more recent case law suggests that agreement between the parties alone is insufficient to modify court-ordered child support. Parents cannot enter into an agreement that effectively modifies a court order entered after the court has determined, pursuant to statutory guidelines, what is in the best interest of the children. Nelson v.Nelson (1990), 65 Ohio App.3d 800, 805. In general, any adjustment from a court's support order is only legally effective after the adjustment has been considered and approved by court action. Id. In some instances, one parent may agree to relieve the other of support obligations. However, such agreements are valid only to the extent that the child support obligation is redistributed from one parent to another, and not terminated or abandoned. Wise v. Wise (1993), 86 Ohio App.3d 702,704-705, citing Crow v. Crow (Apr. 16, 1990), Butler App. No. CA90-06-087, unreported. In addition, such agreements must be supported by consideration. Id., citing Crow and Rhoades v. Rhoades (1974),40 Ohio App.2d 559.
In Wise, the court held that the father was liable for child support arrearage, although the child's maternal grandparents (who were the child's legal custodians) and mother had informed him that he need not make any more payments. The court reasoned that the father had a duty to the state as well as to the minor child to fulfill his support obligation and, as such, it was not within the power of the child's custodians to relieve him of his duty to support the child. Wise at 705; see, also,Nelson at 805.
Thus, even if the parties made a de facto agreement to lower Father's support obligation in this case, that agreement would not be sufficient to modify the existing court order. To modify Father's support obligation, one of the parties needed to file a motion to do so with the court. The trial court is not empowered to retroactively modify a child support order except to the date that the motion for modification was filed. Thus, the trial court abused its discretion when it retroactively modified the child support order so that Father would owe no arrearages.
 IV.
Finally, the JCCSEA asserts that the trial court erred in finding that laches applies due to the JCCSEA's failure to attempt to collect Father's child support arrearages at an earlier date, combined with Mother's failure to object to Father's unilateral reduction in support payments. The trial court found that Father was prejudiced by the JCCSEA's and Mother's delay in informing him that he was not paying the correct amount of support, because their delay deprived Father of the opportunity to dispute the amount of child support he owed.
The determination of whether laches is applicable in a given case and the weighing of evidence are factual matters. Kinney v. Mathias (1984),10 Ohio St.3d 72, 74. Application of the doctrine of laches is within the sound discretion of the trial court. Donovan v. Zajac (1997),125 Ohio App.3d 245, 252; Scioto Cty. Child Support Enforcement Agencyv. Gardner (1996), 113 Ohio App.3d 46 . Nonetheless, as a general rule,laches can not be imputed against the state, Ohio State Bd. of Pharmacyv. Frantz (1990), 51 Ohio St.3d 143, paragraph three of the syllabus, nor against a county CSEA attempting to recover payment for child support arrearages. Porter v. Little (Sept. 18, 2000), Butler App. No. CA2000-03-052, unreported, citing Gardner at 57; but see Stump v. Stump
(Jan. 24, 2000), Butler App. No. CA99-03-064, unreported.
Laches constitutes "`an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence.'" Wise,supra at 705, quoting Connin v. Bailey (1984), 15 Ohio St.3d 34, 35, quoting Smith v. Smith (1957), 107 Ohio App. 440. Delay itself does not give rise to the defense of laches. Id. In order to invoke a laches defense, the defending party must show that he has been materially prejudiced by the delay of the party asserting the claim. Id.; see, also,Smith v. Smith (1959), 168 Ohio St. 447, paragraph three of the syllabus.
Material prejudice is established upon a showing of either (1) the loss of evidence helpful to the defendant's case; or (2) a change in the defendant's position that would not have occurred had the plaintiff not delayed in asserting her rights. Donovan at 250. However, as a matter of law, "[t]he mere inconvenience of having to meet an existing obligation imposed not only by statute but by an order or judgment of a court of record at a time later than that specified in such statute or order cannot be called material prejudice." Smith, 168 Ohio St. at 457;Donovan at 250; Gardner at 58.
In Smith, the Supreme Court of Ohio held that the mere lapse of fourteen years was insufficient to demonstrate prejudice to the defendant, who had failed to make court-ordered child support payments. More recently, in Kinney, supra, a biological father asserted that a nine-year delay prejudiced him because, acting under the assumption that his child had been adopted by a stepfather, the biological father changed his "financial position" by remarrying and having more children. Speaking directly to the issue of prejudice, the court found that the father's change of financial position was, "as a matter of law, insufficient to rise to the level of prejudice necessary to invoke the doctrine of laches." Kinney at 75, citing Smith, supra. See, also, Wright v. Oliver
(1988), 35 Ohio St.3d 10, 12; Chenoweth v. Chenoweth (Mar. 20, 1998), Montgomery App. No. 16700, unreported.
In this case, the trial court found that the JCCSEA and Mother did nothing to notify Father that he was incurring arrearages between May 1994 and May 1998. Additionally, the court found that this four-year delay materially prejudiced Father by depriving him of the opportunity to seek to dispute the arrearage, thus potentially altering his financial position. However, pursuant to Smith and Kinney, supra, this prejudice to Father is insufficient as a matter of law to invoke the doctrine of laches. Father is merely being called upon to comply with an obligation imposed upon him by an existing court order. While Father may have changed his financial position in reliance upon his belief that the order would never be enforced, this prejudice is insufficient as a matter of law to support a defense of laches. Therefore, we find that the trial court abused its discretion and erred as a matter of law by holding that the JCCSEA and Mother could not enforce Father's obligation due to laches.
 VI.
In conclusion, we find that the JCCSEA had standing in this matter; that the trial court properly considered the arguments of the parties, including the JCCSEA; and that the trial court ruled upon the Father's motion instead of dismissing it. However, we find that the trial court exceeded the scope of its discretionary powers when it retroactively reduced Father's child support obligation. Additionally, we find that the trial court abused its discretion and erred as a matter of law when it ruled that Father was materially prejudiced and entitled to a laches defense due to the JCCSEA's and Mother's delay in enforcing his existing obligation. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J: Concurs in Judgment Only with Concurring Opinion.
Evans, J: Concurs in Judgment Only and Concurs in Concurring Opinion.
[2] Sally Wilson, the JCCSEA custodian of records, testified that arrearages are sent to the tax offset program once they are in excess of five hundred dollars.
[3] R.C. 3113.21 was repealed, effective March 22, 2001 by Section 2, Am. S.B. 180.