OPINION
{¶ 1} Plaintiff-appellant, Vasiliy Galay, administrator of the estates of Lyubomir Galay and Mikhail Ogonovskiy, appeals from a judgment of the Court of Claims of Ohio in favor of defendant-appellee, Ohio Department of Transportation ("ODOT"). For the following reasons, we affirm the judgment of the Court of Claims.
 {¶ 2} On May 19, 2001, Mikhail Ogonovskiy and his passenger, Lyubomir Galay, were traveling westbound on S.R. 309 in Marion County, Ohio. Angel Woodruff and a passenger were traveling eastbound on S.R. 309. Near the intersection of S.R. 309 and Kenton-Galion Road, the vehicle that Ogonovskiy was driving and Woodruff's vehicle collided. Lyubomir Galay and Mikhail Ogonovskiy died from injuries sustained in the collision. Woodruff and her passenger were injured in the accident.
 {¶ 3} On May 12, 2003, on behalf of the decedents' families and next of kin, Vasiliy Galay brought a wrongful death lawsuit against ODOT. In this lawsuit, Galay alleged, among other things, that ODOT was negligent in designing, constructing, marking, and maintaining the intersection of S.R. 309 and Kenton-Galion Road. Galay further alleged that ODOT's purported negligence proximately caused the deaths of Lyubomir Galay and Mikhail Ogonovskiy.[1]
 {¶ 4} Denying plaintiff's allegations of liability, ODOT asserted a counterclaim in which ODOT sought contribution from Ogonovskiy's estate for Ogonovskiy's purported negligence that allegedly contributed to the accident.
 {¶ 5} Bifurcating the issues of liability and damages, the Court of Claims held a bench trial. After ordering the parties to file proposed findings of fact and conclusions of law, the Court of Claims found that plaintiff failed to prove any of his claims by a preponderance of the evidence, and the court accordingly entered judgment in favor of ODOT. From this judgment, plaintiff now appeals.[2]
 {¶ 6} Plaintiff assigns eight errors for our consideration:
ASSIGNMENT OF ERROR NO. 1. THE COURT COMMITTED PLAIN, PREJUDICIAL ERROR IN FINDING THAT THE PATH OF TRAVEL ON EASTBOUND ROUTE 309 AT THE INTERSECTION WITH KENTON-GALLION ROAD WAS A 30 DEGREE LEFT TURN.
ASSIGNMENT OF ERROR NO. 2. THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
ASSIGNMENT OF ERROR NO. 3. THE TRIAL COURT ERRED IN FAILING TO ADOPT PLAINTIFF'S PROPOSED FINDINGS OF FACT REGARDING THE CHARACTER OF THE INTERSECTION OF S.R. 309 WITH KENTION-GALION ROAD.
ASSIGNMENT OF ERROR NO. 4. THE TRIAL COURT ERRED IN FAILING TO FIND THAT ODOT FAILED TO FOLLOW A MANDATORY PROVISION OF THE MUTCD REGARDING ROUTE TURN ASSEMBLIES.
ASSIGNMENT OF ERROR NO. 5. WHETHER THE TRIAL COURT ERRED IN FAILING TO APPLY THE PROPER STANDARD OF CARE.
ASSIGNMENT OF ERROR NO. 6. THE TRIAL COURT ERRED IN IMPROPERLY APPLYING THE REASONABLE ENGINEER STANDARD.
ASSIGNMENT OF ERROR NO. 7. THE TRIAL COURT ERRED IN FAILING TO UPHOLD THE DUTY OF ODOT ENGINEERS TO USE SOUND ENGINEERING JUDGMENT AS PRESCRIBED BY RC SEC. 4511.09.
ASSIGNMENT OF ERROR NO. 8. THE TRIAL COURT ERRED IN EXCLUDING EVIDENCE OF SIGNAGE AT SIMILAR INTERSECTIONS.
 {¶ 7} "To maintain an action for damages for wrongful death upon the theory of negligence, a plaintiff must show (1) the existence of a duty owing to plaintiff's decedent, i.e., the duty to exercise ordinary care, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the death." Bennison v. Stillpass Transit Co. (1966),5 Ohio St.2d 122, paragraph one of the syllabus.
 {¶ 8} "`[N]egligence is without legal consequence unless it is a proximate cause of an injury.'" Whiting v. Ohio Dept. ofMental Health (2001), 141 Ohio App.3d 198, 202, quoting Oslerv. Lorain (1986), 28 Ohio St.3d 345, 347. In Whiting, this court remarked:
While difficult to define, "proximate cause" is generally established "`where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act.'" * * * Essentially, a plaintiff must present evidence upon which a trier of fact may reasonably determine that it is more likely than not that the negligence of a defendant was the direct or proximate cause of the plaintiff's injury. * * * Further, a plaintiff must establish proximate cause by a preponderance of the evidence. * * *
Id. at 202-203. (Citations omitted.)
 {¶ 9} Here, the Court of Claims found that Angel Woodruff's failure to yield to oncoming traffic while turning left was the sole proximate cause of the accident. However, despite this finding by the court, plaintiff's assignments of error do not expressly challenge the Court of Claims' proximate cause finding.
 {¶ 10} By his first assignment of error, plaintiff asserts that the Court of Claims committed plain error by finding that the path of travel on eastbound S.R. 309 at the intersection of Kenton-Galion was a 30-degree left turn.
 {¶ 11} In Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, the Supreme Court of Ohio held:
In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.
Id. at syllabus.
 {¶ 12} Accordingly, under Goldfuss, the relevant inquiry requires determining whether a case is "the extremely rare case involving exceptional circumstances where error, to which no objection was made at trial, seriously affects the basic fairness, integrity, or public reputation of the judicial process[.]" Id.
 {¶ 13} Here, however, the purported error advanced by plaintiff is not an error to which no objection was made at trial. Rather, by his first assignment of error, plaintiff challenges a factual finding that the Court of Claims rendered in its judgment. Thus, plaintiff essentially is claiming that the court's factual finding is against the manifest weight of the evidence.
 {¶ 14} "When a party asserts that the finding is against the manifest weight of the evidence, he must demonstrate that the evidence could lead to only one conclusion and that conclusion is contrary to the judgment." Hill v. Briggs (1996),111 Ohio App.3d 405, 412, dismissed, appeal not allowed,77 Ohio St.3d 1469. See, also, C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus (holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence").
 {¶ 15} Plaintiff's first assignment of error challenges the following factual finding by the Court of Claims: "Kenton-Galion Road, a side road, intersects SR 309 a short distance west of the curve, such that eastbound motorists on SR 309 who wish to exit onto Kenton-Galion Road must turn approximately 30 degrees to the left and cross the westbound lane of SR 309." (Decision, at 1.) The court's factual finding is based upon the testimony of Mr. David Poling, a civil engineer. The Court of Claims characterized Mr. Poling's testimony as follows: "Poling testified that the intersection of SR 309 and Kenton-Galion Road was designed in 1932. Poling explained that current design standards aim for a 70 degree or greater intersecting angle, but that Kenton-Galion Road intersects SR 309 at approximately a 30-degree angle." (Decision, at 5.)
 {¶ 16} The record supports the Court of Claims' characterization of Mr. Poling's testimony. At trial, David Poling testified, in part:
Q. [By plaintiff's attorney] And this [is] a page out of the 1932 design plans for [S.R.] 309 and Kenton Galion Road?
A. Yes, it is.
Q. And you would agree that this is pretty much the shape of the road — the layout of the road as it exists from 1932 through today?
A. Yes, it is.
* * *
Q. So the standard would be different angles and intersecting angles than we have here today?
A. Yes.
Q. And barring the exception process which you referred to — and the reason for that is safety concerns, is it not?
A. There's an intersection angle that we try to meet of 70 degrees or greater, and that's for sight distance for the people coming off the intersecting road.
Q. And we have intersecting angles which are probably 30 degrees or less, less than half of what's required?
A. Right.
(Tr. 76-78.)
 {¶ 17} Mr. Poling also testified: "If you want to follow [S.R.] 309, you have to go around the curve according to the curve sign and pavement markings. To go onton [sic] Kenton Galion Road, you have to make a left turn." (Tr. 88-89.)
 {¶ 18} Plaintiff contends, however, that the weight of other adduced evidence supports a contrary finding of fact, namely, that the path of travel from eastbound S.R. 309 to Kenton-Galion Road was essentially a straight line, not a 30-degree turn.
 {¶ 19} In a civil trial, determination of the weight to be given the evidence and determination of witness credibility are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Therefore, in this case, it was within the province of the Court of Claims, as the trier of fact, to determine the weight of the evidence and witness credibility.
 {¶ 20} In Maxton Motors, Inc. v. Schindler (Dec. 26, 1984), Defiance App. No. 4-83-23, the court observed:
"* * * [A]s a general rule the testimony of each witness must be submitted to the jury, and if testimony is contradictory or conflicting as to facts, the truth is to be ascertained by the jury and separated from the false testimony. It is properly a question for the jury, and its duty to determine what witnesses are to be believed, or which are the most worthy of belief, and to decided [sic] just where the truth lies, if there is a sharp and direct conflict between the testimony of different witnesses, and to determine the credibility of each, and how far each is reliable and is to be believed."
Id., quoting 44 Ohio Jurisprudence 3d (1983), 375, Evidence and Witnesses; see, also, Reece v. Kneisley (Dec. 28, 1984), Marion App. No. 9-83-32.
 {¶ 21} In the present case, Mr. Poling's testimony, if believed by the Court of Claims as the trier of fact, supports the court's finding of fact. Under these facts and circumstances, we find that there is some competent, credible evidence to support the court's factual finding. We therefore do not conclude that the Court of Claims' characterization of David Poling's testimony and its reliance upon Mr. Poling's testimony is against the manifest weight of the evidence. Moreover, we further find that plaintiff's claim of plain error is inapposite to the contentions set forth in plaintiff's first assignment of error.
 {¶ 22} Accordingly, plaintiff's first assignment of error is overruled.
 {¶ 23} Plaintiff's second assignment of error asserts that the Court of Claims' judgment is against the manifest weight of the evidence.
 {¶ 24} As to civil judgments, if a judgment is supported by some competent, credible evidence going to all the essential elements of the case, then a reviewing court shall not reverse such a judgment as being against the manifest weight of the evidence. C.E. Morris Co., supra, at syllabus. See, also,Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80
(stating that "an appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge").
 {¶ 25} Accordingly, the relevant inquiry here is whether some competent, credible evidence going to all the essential elements of the case supports the Court of Claims' judgment and, if so, then this court must not reverse the Court of Claims' judgment as being against the manifest weight of the evidence.
 {¶ 26} When considering whether a judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct. Seasons Coal Co., at 79-80. See, also, DeHass,
supra, at paragraph one of the syllabus (holding that in civil and criminal trials a determination of the weight of the evidence and of the credibility of a witness's testimony is primarily for the trier of facts).
 {¶ 27} The Seasons Coal court explained: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80.
 {¶ 28} Here, the Court of Claims found the testimony of ODOT's expert witness, David Holstein, who opined to a reasonable degree of engineering certainty that signage at the intersection of S.R. 309 and Kenton-Galion Road was in accordance with requirements of the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD"), was more persuasive than the testimony of plaintiff's expert witness, James Madden. (Decision, at 6.) UnderSeasons Coal, such a finding of persuasiveness is presumed proper. Id. at 79-80. Mr. Holstein's testimony, if believed by the Court of Claims, supports the court's conclusion of law that plaintiff failed to prove that ODOT failed to comply with the OMUTCD's mandatory requirements.
 {¶ 29} Furthermore, the Court of Claims' conclusion of law that ODOT lacked liability also is not contrary to this court's judicial antecedents. Although ODOT was under a duty to maintain the intersection in a reasonably safe condition, Rhodus v. OhioDept. of Transp. (1990), 67 Ohio App.3d 723, 730, jurisdictional motion overruled, 55 Ohio St.3d 709, citing Knickel v. Dept. ofTransp. (1976), 49 Ohio App.2d 335, ODOT was not under a mandatory duty to redesign or reconstruct the intersection of S.R. 309 and Kenton-Galion Road. See, e.g., former R.C. 5501.31
(providing that "[t]he director of transportation shall have general supervision of all roads comprising the state highway system. The director may alter, widen, straighten, realign, relocate, establish, construct, reconstruct, improve, maintain, repair, and preserve any road or highway on the state highway system"). (Emphasis added.) In Wiebelt v. Ohio Dept. of Transp.
(June 24, 1993), Franklin App. No. 93AP-117, this court stated:
A duty to maintain state highways is distinguishable from a duty to redesign or reconstruct. Maintenance involves only the preservation of existing highway facilities, rather than the initiation of substantial improvements. This court has held that ODOT has no duty to upgrade highways to current design standards when acting in the course of maintenance. Lunar v. Ohio Dept. ofTransp. (1989), 61 Ohio App.3d 143, 149.
 {¶ 30} Based upon our review, we therefore conclude that there is some competent, credible evidence going to all the essential elements of the case to support the Court of Claims' judgment. We further conclude that its judgment is not against the manifest weight of the evidence.
 {¶ 31} Accordingly, plaintiff's second assignment of error is overruled.
 {¶ 32} By his third assignment of error, plaintiff asserts the Court of Claims erred by failing to adopt plaintiff's proposed findings of fact concerning the character of the intersection at S.R. 309 and Kenton-Galion Road.
 {¶ 33} Civ.R. 52 provides, in part: "When a request for findings of fact and conclusions of law is made, the court, in its discretion, may require any or all of the parties to submit proposed findings of fact and conclusions of law; however, only those findings of fact and conclusions of law made by the court shall form part of the record."
 {¶ 34} Professors Howard P. Fink, Arthur F. Greenbaum, and Charles E. Wilson have remarked:
Unlike Federal Rule of Civil Procedure 52, which specifies the deference due the findings of fact and conclusions of law on review in the federal courts, the Ohio Rule is silent on the standard for review. As set forth in the case law, if the findings are appropriate in form, a judgment will not be overturned unless the record and findings reveal an error of law or that the decision is against the "manifest weight of the evidence." If the judgment is supported "by some competent, credible evidence," it will not be reversed as against the manifest weight of the evidence.
Fink, Greenbaum, Wilson, Guide to the Ohio Rules of Civil Procedure (2006), 52-16, Section 52:12. (Footnote omitted.) Cf. Fed.R.Civ.P. 52(a) (providing, in part, that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"); Brownlow v. Edgecomb Metals Co. (C.A.6, 1989),867 F.2d 960, 963, quoting United States v. United States GypsumCo. (1948), 333 U.S. 364, 395, 68 S.Ct. 525, rehearing denied,333 U.S. 869, 68 S.Ct. 788 (stating that "`[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed'").
 {¶ 35} In Kinney v. Mathias (1984), 10 Ohio St.3d 72, the Supreme Court of Ohio stated:
The law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence * * * Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. * * *
Id. at 73-74. (Citations omitted.) See, also, Chardon Park,Inc. v. Great Lakes Crushing Ltd., Geauga App. No. 2003-G-2524,2004-Ohio-7221, at ¶ 39 (stating that "[e]rror can only be found when the findings of fact and/or conclusions of law adopted by the trial court are against the manifest weight of the evidence").
 {¶ 36} In our disposition of plaintiff's second assignment of error, we have already concluded that the Court of Claims' judgment was not against the manifest weight of the evidence. By implication, therefore, the court's findings of fact and conclusions of law that are contained in its judgment also properly may be considered as not against the manifest weight of the evidence. Absent a finding that the Court of Claims' findings of fact were against the manifest weight of the evidence, we therefore shall not disturb the court's findings of fact.Kinney, at 73.
 {¶ 37} Here, however, rather than claiming the Court of Claims' findings of fact are against the manifest weight of the evidence, plaintiff instead claims that the court's refusal to adopt his proposed findings of fact concerning the character of the intersection at S.R. 309 and Kenton-Galion Road was error.
 {¶ 38} In Rheude v. Rheude (May 5, 1997), Clermont App. No. CA96-10-084, the court applied an "abuse of discretion" standard to a trial court's rejection of proposed findings of fact and conclusions of law that were untimely filed. Here, even if we were to disturb the Court of Claims' findings of fact, under the facts and circumstances of this case, we do not conclude that the Court of Claims' rejection of plaintiff's proposed findings of fact constitute an abuse of discretion. In Schmidt v. Lanz
(July 1, 1982), Cuyahoga App. No. 44248, the court explained:
* * * Ordinarily, the trial court is the primary fact finder. * * * When the trial court resolves conflicting credible evidence to make factual determinations, appellate courts will generally decline to modify those determinations. * * *
The trial court's factual findings can be disturbed on appeal if there is no evidence supporting that finding. * * * Further, the trial court's finding can be reversed or modified if the appellate court determines the finding is contrary to the manifest weight of the evidence, where the supporting evidence is fundamentally incredible. * * *
* * * [F]actual findings are given that great weight, even if they are intermingled with other factual findings or described by the trial court as conclusions of law. * * * Where the factual findings are ambiguous, they should be construed to be consistent with each other, with the trial court's legal conclusions, and with its judgment.
* * * Appellate courts should not serve as initial triers of fact when another tribunal had a superior opportunity to observe the demeanor of witnesses whose credibility is crucial to that process. * * *
* * * [I]ncomplete findings or erroneous findings are harmless errors if the proper findings actually made are sufficient to justify the trial court's final resolution of the controversy. * * *
Id. See, also, Fink, Greenbaum, Wilson, Guide to the Ohio Rules of Civil Procedure, supra.
 {¶ 39} Based upon our review of the evidence, we find that the supporting evidence underlying the Court of Claims' findings of fact is not fundamentally incredible. We therefore do not find that the court abused its discretion by failing to adopt plaintiff's proposed findings of fact concerning the character of the intersection at S.R. 309 and Kenton-Galion Road.
 {¶ 40} Accordingly, for the foregoing reasons, we overrule plaintiff's third assignment of error.
 {¶ 41} By his fourth assignment of error, plaintiff asserts that the Court of Claims erred by failing to find that ODOT did not follow a mandatory provision of the OMUTCD concerning route turn assemblies.
 {¶ 42} In Rhodus, supra, this court stated that "it has been held that ODOT has a duty to comply with the requirements of its own manual and specifications for a uniform system of traffic control devices." Id. at 730, citing Pierce v. Ohio Dept. ofTransp. (1985), 23 Ohio App.3d 124. The Rhodus court further stated: "Liability may occur, pursuant to the manual, when the applicable terms of the manual are obligatory and those terms are not complied with. * * * Such terms are obligatory when the word `shall' is used in the manual. When the term `should' is used, it is considered `advisable usage, recommended but not mandatory.'" Id. (Citations omitted.)
 {¶ 43} Section 2Q-28 of the OMUTCD, which was in effect at all times pertinent to the proceedings, provided, in part:
Advance Turn Markers shall be used with the appropriate route marker to form a route turn assembly.
This assembly shall be used on a numbered route in advance of an intersection to indicate a turn or change in direction of that route at the intersection and may be erected in advance of a turn which must be made to follow an indicated route.
* * *
Route turn assemblies may be omitted where the character of the roadway clearly indicates the course of the route or routes.
 {¶ 44} Thus, according to Section 2Q-28, where the character of the roadway clearly indicates the course of the route or routes, the use of route turn assemblies is discretionary.
 {¶ 45} At trial, ODOT's expert witness, Mr. David Holstein, testified that a route turn assembly is "comprised of the advance turn marker, which is the arrow * * * and the state route shield, indicating the route it's [sic] placed in advance of an intersection that this number route turns over." (Tr. 537-538.) Mr. Holstein further testified: "For example, 23 north coming out of south of Columbus turns on Livingston Avenue and then up Fourth. This is the type of sign that would be placed in front of the turn where 23 switches over to Livingston Avenue." (Tr. 538.)
 {¶ 46} As to whether a route turn assembly was the correct application for the intersection of S.R. 309 and Kenton-Galion Road, Mr. Holstein opined:
That is not the correct application for this sign. This sign — this assembly is not used to warn of a curve. A curve warning sign is used to warn of a curve. This sign is used to indicate a number route is turning over another route, and if you want to stay on that route, this is the path that you need to follow. It is not the correct application of this sign. [S.R.] 309 is not the correct application.
(Tr. 539.)
 {¶ 47} When asked whether the use of the route turn assembly was considered a "shall" or "may" condition under the manual, Mr. Holstein testified: "In Section 2Q-28 they are a shall condition on a numbered route in advance of an intersection to indicate a turn or change in direction of that route. So for that situation they're a shall condition, but that is not this situation." (Tr. 541.) When asked whether the omission of a route turn assembly was permitted under certain circumstances, Mr. Holstein answered affirmatively and testified: "Again in Section 2Q-28; route turn assemblies may be omitted where the character of the roadway clearly indicates the course of the road." (Tr. 542.)
 {¶ 48} In its decision, the Court of Claims found that "because SR 309 was a through highway with a curve and because the curve did not constitute a `turn or change in direction' of SR 309, advance turn markers were not required." (Decision, at 6.) The court further stated:
* * * [S]ection 2Q-28 of the Manual states that route turn assemblies may be omitted where the character of the roadway clearly indicates the course of the route. The court finds that the land surrounding the curve was flat; that there were no sight obstructions; and, that the pavement markings, including the center lines, edge lines, and reflectors clearly showed that the main route curved to the right. Therefore, the court finds that route turn assemblies were not required by the Manual at this intersection.
(Id., at 7.)
 {¶ 49} Based upon our review of the evidence, including photographs and videotapes of the intersection, we find that the Court of Claims' findings that (1) the curve of the roadway did not constitute a turn or change in direction of S.R. 309, and (2) the character of the roadway clearly indicates the course of S.R. 309 were not against the manifest weight of the evidence. We further find that the Court of Claims' conclusion that route turn assemblies were not required by the OMUTCD is not contrary to law.
 {¶ 50} Accordingly, for the foregoing reasons, we overrule plaintiff's fourth assignment of error.
 {¶ 51} Plaintiff's fifth assignment of error asserts the Court of Claims applied an incorrect standard of care. By this assignment of error, plaintiff seems to claim that the Court of Claims incorrectly failed to find that ODOT breached a duty to construct and maintain the intersection of S.R. 309 and Kenton-Galion Road in a reasonably safe condition.
 {¶ 52} A defendant's duty typically may be established by common law, legislative enactment, or by the particular facts and circumstances of a case. Chambers v. St. Mary's School (1998),82 Ohio St.3d 563, 565, reconsideration denied,83 Ohio St.3d 563, citing Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, paragraph one of the syllabus. "Pursuant to R.C. 5501.11, ODOT has the responsibility to construct and maintain highways in a safe and reasonable manner. However, the state is not an insurer of the safety of its highways. Its duty is to maintain its highways in a reasonably safe condition." Rhodus, supra, at 729-730, citing Knickel, supra. "A duty to maintain state highways is distinguishable from a duty to redesign or reconstruct. Maintenance involves only the preservation of existing highway facilities, rather than the initiation of substantial improvements." Wiebelt, supra; see, also, Estate ofKoon v. Hoskins (Nov. 2, 1993), Franklin App. No. 93AP-642, jurisdictional motion overruled (1994), 69 Ohio St.3d 1406. Cf.Dunlap v. W.L. Logan Trucking Co., 161 Ohio App.3d 51,2005-Ohio-2386, at ¶ 13, appeal not allowed, 106 Ohio St.3d 1546,2005-Ohio-5343 (observing that "although ODOT is immune from suit for decisions characterized by the exercise of engineering judgment or discretion, once ODOT decides to use a particular traffic control device, it may be held liable for negligence in implementing its plans").
 {¶ 53} Here, the intersection at issue was constructed in 1932 and no substantial improvements to the intersection had ever been initiated. (Tr. 76.) Moreover, in the six years prior to the accident, there were no reported accidents at this intersection. (Tr. 583-584.)
 {¶ 54} Absent a duty to redesign or reconstruct the intersection, and absent any reported accidents at the intersection in a six-year period prior to the accident, which may have provided notice to ODOT about safety issues at the intersection, we cannot conclude that under this case's particular facts and circumstances the Court of Claims erred by failing to find that ODOT breached a duty to maintain the intersection of S.R. 309 and Kenton-Galion Road in a reasonably safe condition.
 {¶ 55} Furthermore, absent a finding that ODOT failed to comply with obligatory terms of the OMUTCD, the Court of Claims correctly found that liability did not attach to ODOT. See, generally, Rhodus, at 730 (stating that "[l]iability may occur, pursuant to the manual, when the applicable terms of the manual are obligatory and those terms are not complied with").
 {¶ 56} Accordingly, for the foregoing reasons, we overrule plaintiff's fifth assignment of error.
 {¶ 57} By his sixth assignment of error, plaintiff asserts the Court of Claims improperly applied the "reasonable engineer standard." Because no engineering study of the intersection at S.R. 309 and Kenton-Galion Road had been performed since 1932 and because the evidence showed that the intersection did not meet current design standards, plaintiff contends that the Court of Claims erred by not finding that ODOT breached a duty of care.
 {¶ 58} The state has a duty to maintain its highways in a reasonably safe condition. Rhodus, at 730, citing Knickel,
supra. However, "[the state's] duty to maintain state highways is distinguishable from a duty to redesign or reconstruct."Wiebelt, supra. "Maintenance involves only the preservation of existing highway facilities, rather than the initiation of substantial improvements." Id. The state is not an insurer of the safety of its highways. Rhodus, supra, at 729-730.
 {¶ 59} Because the state has no duty to insure the safety of its highways and because the state's duty to maintain its highways in a reasonably safe condition involves only the preservation of existing highway facilities and not the initiation of substantial improvements, we cannot conclude that the ODOT's failure to perform an engineering study and its failure to reconstruct the intersection so that it would conform to current design standards constitutes a breach of a duty of care.
 {¶ 60} Accordingly, we overrule plaintiff's sixth assignment of error.
 {¶ 61} By his seventh assignment of error, plaintiff asserts that the Court of Claims erred by failing to find that ODOT breached a duty of care under R.C. 4511.09.
 {¶ 62} R.C. 4511.09 provides:
The department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices, including signs denoting names of streets and highways, for use upon highways within this state. Such uniform system shall correlate with, and so far as possible conform to, the system approved by the American Association of State Highway Officials.
 {¶ 63} At the time of the collision, ODOT had prepared and adopted the "Ohio Manual of Uniform Traffic Control Devices For Streets and Highways." Thus, as required by R.C. 4511.09, ODOT had a manual and specifications for a uniform system of traffic control devices.
 {¶ 64} In Dunlap, supra, this court stated that "[w]here ODOT chooses to act, it is under a duty to conform to requirements in the MUTCD; however, the manual leaves some decisions up to the reasonable engineering judgment of ODOT's agents." Id. at ¶ 16, citing Perkins v. Ohio Dept. of Transp.
(1989), 65 Ohio App.3d 487 (Bryant, J., dissenting), cause dismissed (1991), 57 Ohio St.3d 612, rehearing denied (1991),58 Ohio St.3d 711. "When the manual does not prescribe the duty, or standard of care, the proper standard is that of a reasonable engineer using accepted practices at the time." Dunlap, at ¶ 16, citing Madunicky v. Ohio Dept. of Transp. (1996),109 Ohio App.3d 418, 421, appeal not allowed, 76 Ohio St.3d 1437, citingLunar v. Ohio Dept. of Transp. (1989), 61 Ohio App.3d 143, 147.
 {¶ 65} Here, under the provisions of the OMUTCD, ODOT was not required to use additional signage at the intersection of S.R. 309 and Kenton-Galion Road. Even though the OMUTCD did not require the use of additional signage, plaintiff nevertheless contends that the Court of Claims should have applied a "reasonable engineer" standard in considering ODOT's liability. And, if such a standard were applied, plaintiff asserts ODOT should have been found liable because the intersection of S.R. 309 and Kenton-Galion Road does not meet current design standards and no engineering study of this intersection has been performed since the roadway's construction in 1932.
 {¶ 66} In Dunlap, this court observed that "it is not our role or that of the trial court to second-guess ODOT's discretionary choice of one reasonable option over another." Id. at ¶ 22. "`Perhaps the implementation of one of the other options would have prevented the accident in this case. However, we will not impose liability upon defendant in exercising its discretion to select one available reasonable option over another.'" Id., quoting Pottenger v. Ohio Dept. of Transp. (Dec. 7, 1989), Franklin App. No. 88AP-832, jurisdictional motion overruled (1990), 50 Ohio St.3d 708.
 {¶ 67} Similarly, here ODOT was under no duty under the OMUTCD to place additional signage at the intersection of S.R. 309 and Kenton-Galion Road. Despite the preference of plaintiff's expert witness, we will not impose liability upon ODOT for complying with the requirements of the OMUTCD.
 {¶ 68} Accordingly, plaintiff's seventh assignment of error is overruled.
 {¶ 69} Plaintiff's eighth assignment of error asserts the Court of Claims erred by excluding evidence of signage at similar intersections.
 {¶ 70} A trial court has broad discretion to admit or exclude evidence, and in the absence of an abuse of that discretion that results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Shultz v. Shultz
(1996), 110 Ohio App.3d 715, 726, citing Kirschbaum v. Dillon
(1991), 58 Ohio St.3d 58, 66; State v. Fadis (Mar. 26, 2002), Franklin App. No. 01AP-865, appeal not allowed,96 Ohio St.3d 1441, citing Kirschbaum, supra, at 66. An "abuse of discretion" "`connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 71} Thus, the relevant inquiry here is whether the Court of Claims unreasonably, arbitrarily, or unconscionably excluded plaintiff's proffered signage evidence, which resulted in material prejudice to defendant.
 {¶ 72} In the present case, the OMUTCD did not require ODOT to use additional signage at the intersection of S.R. 309 and Kenton-Galion Road, and therefore ODOT was under no mandatory duty to use signage contained in plaintiff's proffered evidence. Further, plaintiff cannot show that he was materially prejudiced by the exclusion of plaintiff's proffered signage evidence. See, e.g., Perkins, supra, at 495 (stating that "[w]hile defendant is under a duty to properly place in accordance with its manual those signs which it deems necessary, defendant is not, as a matter of law, required to place additional traffic control devices not mandated by the manual").
 {¶ 73} Furthermore, even assuming arguendo that, under the OMUTCD, ODOT had a duty to install additional signage at the intersection and failed to perform this duty, such a failure to perform could constitute evidence of negligence, but such a failure to perform does not conclusively establish liability per se. See Chambers, supra, at syllabus (holding that "[t]he violation of an administrative rule does not constitute negligence per se; however, such a violation may be admissible as evidence of negligence"). To prevail on his claim of negligence, plaintiff was required to prove proximate cause and damages. See Bennison, supra, at paragraph one of the syllabus.
 {¶ 74} However, as plaintiff's assignments of error have not expressly challenged the Court of Claims' finding that Angel Woodruff's failure to yield to oncoming traffic while turning left was the sole proximate cause of the accident, plaintiff apparently does not dispute the court's proximate cause finding. Thus, even if plaintiff conclusively established that ODOT breached a duty owed to plaintiff's decedents, such a determination of a breach of duty is without legal consequence because plaintiff failed to prove ODOT's negligence was the proximate cause of plaintiff's decedents' deaths. See Whiting,
supra, at 202, quoting Osler, supra, at 347 (stating that "`negligence is without legal consequence unless it is a proximate cause of an injury'").
 {¶ 75} Moreover, even if the Court of Claims' proximate cause finding were disputed by plaintiff, because there is some evidence in the record to support the court's proximate cause finding, we cannot conclude that this finding is against the manifest weight of the evidence. See, Tr. 48 (testimony of Trooper Nicholas Malo in which Trooper Malo testified about his recollection that the Woodruff's vehicle was shown to be at fault). Absent a finding that the Court of Claims' proximate cause finding is against the manifest weight of the evidence, and absent an express challenge to the court's proximate cause determination, we therefore do not find that plaintiff was materially prejudiced. See, Perkins, supra at 495 (stating that "a decision by a trial court which has determined that defendant's acts were not the proximate cause of the resulting injury will not be reversed absent a demonstration that such a determination is not supported by some competent credible evidence").
 {¶ 76} Therefore, for the foregoing reasons, we overrule plaintiff's eighth assignment of error.
 {¶ 77} Accordingly, having overruled all eight assignments of error, we therefore affirm the judgment of the Court of Claims of Ohio.
Judgment affirmed.
Klatt, P.J., and McGrath, J., concur.
[1] Prior to the lawsuit in this case, plaintiff sued Angel Woodruff in the Marion County Court of Common Pleas. This suit was later dismissed without prejudice for lack of prosecution. See Galay v. Woodruff (Aug. 23, 2002), Marion Cty. C.P. No. 01 CV 0583. (Final Judgment of Dismissal.)
[2] Because ODOT prevailed, ODOT's counterclaim for contribution was rendered moot, and therefore the judgment in this case is a final appealable order. See, e.g., Wise v.Gursky (1981), 66 Ohio St.2d 241, syllabus (holding that "[a] judgment for the defendant in a civil action, which judgment renders the defendant's third-party complaint for indemnification or contribution moot, is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a judgment"); General Acc. Ins. Co. v. Ins. Co. of N. America
(1989), 44 Ohio St.3d 17, 21 (stating that "even though all the claims or parties are not expressly adjudicated by the trial court, if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable").