[Cite as *York v. Ohio Dept. of Transp.*, 2012-Ohio-3678.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RADIE GRACIE YORK, etc., Admx.

Plaintiff

v.

OHIO DEPARTMENT OF TRANSPORTATION, et al.

Defendants

Case No. 2008-09031

Judge Clark B. Weaver Sr.

DECISION

{¶ 1} Plaintiff brought this action alleging negligence, wrongful death, and loss of consortium on behalf of herself and her decedent, Dalphie York. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability. At trial, the court APPROVED the parties' July 21, 2011 stipulation.[1]

{¶ 2} On November 30, 2006, York was traveling northbound on Interstate 271 (I-271) in Summit County, Ohio. At the time, twin bridges over I-271 were being constructed by defendants. As part of the construction project, there was a cross-over and diversion, approximately one mile in length, on northbound I-271. The previously existing southbound I-271 shoulder had been removed, and temporary northbound lanes were constructed in the former southbound shoulder. The plans for the northbound cross-over and diversion depicted a one foot paved berm, an 11 foot lane, a second 11 foot lane, a one foot paved shoulder, and two feet of aggregate shoulder. (Defendants' Exhibit C.) On November 29, 2006, the Ohio Department of

---

[1]The parties' February 17, 2011 stipulation is also APPROVED.

Transportation (ODOT) inspected and approved the cross-over, as constructed by the contractor, and opened it to the traveling public.

{¶ 3} Around 10:20 p.m. on November 30, 2006, Isaiah Killen drove his semi-trailer truck through the construction zone and while he was in the cross-over, his semi-trailer truck went off the edge of the road and traveled down an embankment. Then, at 11:10 p.m., York was driving his semi-trailer truck through the cross-over and York's vehicle also went off the road, down into the embankment, and hit Killen's semi-trailer truck. York was transported to a hospital in Akron, Ohio, where he died in January 2007.

{¶ 4} Plaintiff alleges that ODOT was negligent in designing, inspecting and approving the opening of the cross-over to the traveling public when it only had a one foot paved shoulder, the aggregate material was not level with the paved shoulder, and the strength of the aggregate was deficient. Defendants argue that they did not breach the standard of care. Alternatively, defendants contend that even if some breach of duty were established, York's negligence was greater than any negligence on the part of ODOT.

{¶ 5} Isaiah Killen, an over the road truck driver of 12 years, testified that he drove his semi-trailer truck on I-271 northbound on November 30, 2006. He explained that he was well-rested when he began his drive from Hilliard, Ohio to northeast Ohio. He stated that it had been raining throughout the day, but it was not raining when he entered the construction zone on I-271 around 10:00 p.m. He explained that as he was driving northbound, there was a cross-over into the southbound lane and that the speed limit was reduced to 55 miles per hour (mph). Killen stated that he set his cruise control to 55 mph as he drove through the construction zone. Killen stated that at the start of the cross-over there was a curve in the road and that the road then becomes straight for the remainder of the diversion. He explained that he traveled in the right lane of the cross-over for approximately one quarter mile, and was beyond the curve in the road when his front right wheels went off the road. He testified that due to a crown in the road, his semi-trailer truck went right of the lane. According to Killen, he encountered "softness" as soon as he crossed the white line and knew that he would jackknife if he attempted to regain control of the semi-trailer truck. He did not attempt to recover into

the lane but instead aimed to keep his semi-trailer truck upright as he went down the embankment.  Killen stated that he had no way to regain control and reenter the lane because there was a small shoulder.  Further, he explained that the gravel next to the paved shoulder was "as soft as the hill."

{¶ 6} Killen testified that he was standing near his vehicle at the bottom of the embankment when he heard someone yell to him to get out of the way and Killen saw the headlights from a semi-trailer truck heading toward him.  According to Killen, when York's semi-trailer truck stopped at the bottom of the embankment, its tracks mirrored the tracks from his semi-trailer truck.  (Plaintiff's Exhibit 9A.)  While Killen did not speak with York at the accident scene, Killen testified that based on his observations, the same thing happened to York's semi-trailer truck that had happened to him.

{¶ 7} Killen admitted that a driver needs to be more cautious while traveling through a construction zone.  He testified that he saw signs that identified the construction zone and that the edge lines were bright and visible.  He explained that it is easy to travel right of the lane because a semi-trailer truck takes up the entire lane; however, he admitted that he has an obligation to drive his vehicle in the marked lanes.

{¶ 8} Plaintiff testified that she had been married to York for 31 years.  Plaintiff testified that York worked as a truck driver for a small company in Texas and that he had been a truck driver for approximately 40 years.  After York's accident, plaintiff traveled to the hospital in Akron, Ohio to be with her husband.  While he was in the hospital, York told plaintiff that on the day of the accident, it had been raining and that as he was driving on I-271, the road "gave away."  York subsequently died in the hospital.

{¶ 9} In order for plaintiff to prevail upon her claim of negligence and wrongful death predicated upon negligence, she must prove by a preponderance of the evidence that defendants owed plaintiff's decedent a duty, that defendants' actions or omissions resulted in a breach of that duty, and that the breach proximately caused plaintiff's decedent's injuries. *Armstrong v. Best Buy Co.*, *Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, ¶8, citing *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77 (1984); *Galay v. Dept. of Transp.* 10th Dist. No. 05AP-383, 2006-Ohio-4113, ¶7.

{¶ 10} Although ODOT is not an insurer of the safety of the state's highways, ODOT has a general duty to maintain and repair state highways such that they are free from unreasonable risk of harm to the motoring public, and this duty is owed both under normal traffic conditions and during highway construction projects. *Roadway Express, Inc. v. Ohio Dept. of Transp.*, 10th Dist. No. 00AP-1119 (June 28, 2001). However, "ODOT cannot guarantee the same level of safety during a highway construction project as it can under normal traffic conditions. * * * ODOT is, nonetheless, required to provide the traveling public with a reasonable degree of safety in construction zones by way of utilizing traffic control barrels, reducing the applicable speed limit, and erecting construction warning signs. * * * [A] court must look at the totality of the circumstances in determining whether ODOT acted sufficiently to render the highway reasonably safe for the traveling public during the construction project." *Basilone v. Ohio Dept. of Transp.,* 10th Dist. No. 00AP-811 (Feb. 13, 2001), citing *Feichtner v. Ohio Dept. of Transp.,* 114 Ohio App.3d 346 (10th Dist.1995).

{¶ 11} Plaintiff presented the testimony of Andrew Ramisch, who is the president of Product & Highway Safety Institute and a registered professional engineer in Washington, D.C. In preparing for his testimony, he reviewed depositions, pleadings, the Ohio standards for construction, federal standards for highway safety, the traffic crash report, and the video taken by ODOT the day after the accident. However, he did not reconstruct York's accident.

{¶ 12} Section 630-5(2)(c)(vii) of ODOT's Traffic Engineering Manual, as revised on July 16, 2004, states:

{¶ 13} "2. For Interstate and Interstate Look-alike Work Zones (Major and Minor Projects):

{¶ 14} "* * *

{¶ 15} "c. The following shall be used to create the cross/transverse sections in 2b:

{¶ 16} "* * *

{¶ 17} "vii. Show a 2 foot (0.6 meter) paved shoulder where possible; and indicate locations where this is not possible." (Plaintiff's Exhibit 12.)[2]

{¶ 18} Regarding the width of the paved shoulder, Ramisch testified that the ODOT standard at the time of York's accident required a minimum of two feet of paved shoulder and that the shoulder where the accident occurred was only one foot and therefore did not meet this requirement. Further, Ramisch testified that there were no space restrictions making a two foot paved shoulder impossible to construct. Ramisch testified that this section creates a mandatory duty upon ODOT that should have been applied to the I-271 construction project. Ramisch stated that the cross-over was an unreasonably dangerous condition.

{¶ 19} Ramisch admitted that when the construction project was designed, the one foot paved shoulder in the cross-over complied with ODOT specifications; however, he testified that when the ODOT standards changed in July 2004, the I-271 construction plans should have been revised. Further, he testified that even though the designs in this construction project were submitted before the two foot paved shoulder language was incorporated into ODOT documents, Ramisch opined that ODOT was negligent in failing to incorporate the two foot shoulder into the plans for this construction project.

{¶ 20} Ramisch testified that it is foreseeable that people will drive outside of the travel lane and a wider "recovery area" enables a driver to recover into the travel lane. Ramisch expressed no opinion as to why York crossed the white line. According to Ramisch, York's semi-trailer truck had approximately one and a half feet on each side as it traveled in the right lane through the construction zone.

{¶ 21} Ramisch testified that ODOT should have followed the United States Department of Transportation (USDOT) guidelines when section 630-5(2)(c)(vii) of ODOT's Traffic Engineering Manual was updated in 2004. The USDOT Highway Safety Program Manual No. 12, Highway Design, Construction, and Maintenance states, "[s]afety features that were inadvertently excluded or developed subsequent to the design phase should be incorporated during the construction phase." (Plaintiff's Exhibit 6.) However, on cross-examination, Ramisch admitted that this federal manual is a "guide" for states and that the manual says that it is to be used to assist states in

_____

[2]Plaintiff's Exhibit 5 is a more recent edition of the Traffic Engineering Manual and the language

preferred highway safety practice. Ramisch was not aware if ODOT has adopted the retroactive provision contained in the USDOT manual.

{¶ 22} Regarding the aggregate surface adjacent to the paved shoulder, Ramisch testified that based upon his observations of the photograph contained in Plaintiff's Exhibit 9V, the difference in the elevation between the shoulder and the aggregate is greater than the half inch differential allowed by Ohio standards. He opined that ODOT was negligent in allowing the road to open with this type of "drop-off" between the paved shoulder and the aggregate. However, he admitted that he could not say where York's semi-trailer truck went off the road in relation to the aggregate appearing in the photograph.

{¶ 23} Further, examining the photograph contained in Plaintiff's Exhibit 9F, Ramisch stated that the tire tracks visible in the aggregate indicates the aggregate's instability and compactability. Ramisch explained that if the aggregate was properly supported, the tire imprints would not be visible. Ramisch testified that ODOT could have tested the aggregate to determine if it was stable but that there was no evidence that this test was done. Further, Ramisch testified that while it rained on the day of the accident, one day of rain should not have impacted the integrity of the aggregate. Ramisch opined that if ODOT had built a two foot shoulder as well as a strong aggregate, plaintiff would have had time to recover when his vehicle traveled right of the lane.

{¶ 24} Sava Gmitric has been employed by ODOT for 22 years and has been a transportation engineer II for the last 15 years. He testified that he was the project engineer on the I-271 construction project involving the building of twin bridges. He became involved with this project in the summer of 2005 when construction began. Gmitric explained that he was the highest level ODOT official on the job site and that as such he was responsible for administrating the contract on-site to ensure that construction was completed by the contractor according to the design plans. He explained that while the contractor performed the work on the project, ODOT inspected the work, checked the quality of materials, and ensured that the work complied with the design plans and specifications. Further, he stated that ODOT had to give the final

formerly contained in section 630-5(2)(c)(vii) now appears in section 630-5(2)(b)(vii).

approval to open the cross-over and ODOT could tell the contractor if the cross-over needed to be changed before it was opened to traffic. Gmitric testified he approved the cross-over to open on November 29, 2006, after an inspection that the cross-over complied with the design plans. Gmitric testified that he was called to the scene of the two accidents on November 30, 2006. He could see where the two semi-trailer trucks went off the road and he noted that they both left the road near the same location. Further, the following morning he drove through the construction zone on I-271 to take a videotape of the accident scene. (Plaintiff's Exhibit 11.)

{¶ 25} Gmitric testified that he did not use the Traffic Engineering Manual on the project. Further, he stated that he was not familiar with section 630-5(2)(c)(vii) at the time of the accident. He testified that ODOT built "what the plan said to build" and that he did not know about the provision in the manual.

{¶ 26} Gmitric testified that to the right of the one foot paved shoulder in the cross-over was two feet of aggregate shoulder, and that he was familiar with aggregate material and how it was used on this job. According to Gmitric, ODOT tested its materials off-site and when the aggregate material arrived at the construction site, the material had a ticket stating that it was ODOT approved. Further, examining Plaintiff's Exhibit 10, Gmitric could not determine if the aggregate material was at a lower level than the asphalt shoulder.

{¶ 27} David Holstein, a licensed engineer in Ohio, is employed by ODOT as the State Traffic Engineer, and he has held this position for approximately 10 years. In this position, he publishes manuals and determines policy and standards. Holstein explained that he wrote the language contained in section 630-5(2)(c), as revised on July 16, 2004. He testified that section 630-5 of the Traffic Engineering Manual, entitled "Maintenance of Traffic Alternative Analysis (MOTAA)," is consulted in the design process, and it assists designers in identifying and solving potential problems as they design the project. He stated that a two foot shoulder is not mandatory.

{¶ 28} Holstein explained that while the revision to section 630-5(2)(c) occurred on July 16, 2004, the design plans for the I-271 project were approved in September 2004. Holstein testified that the plans for the I-271 project were well beyond the stage of performing a MOTAA when the two foot paved shoulder was first recommended by

the Traffic Engineering Manual in July 2004. Holstein stated that ODOT does not retroactively apply major changes to a design plan. While minor changes can be incorporated into the plan, he testified that no project would ever be completed if major changes were applied retroactively. Further, regarding the USDOT manual (Plaintiff's Exhibit 6), Holstein testified that ODOT has not approved this federal manual. Holstein testified that ODOT has not adopted, as a standard, the language in the USDOT publication requiring subsequent safety features to be incorporated during the construction phase.

{¶ 29} Holstein testified that a bituminous aggregate is a type of aggregate with an asphalt binder and that it is stronger than the aggregate material that was used on the cross-over on I-271. However, he explained that section 640-5.2 of the Traffic Engineering Manual did not require the use of a bituminous aggregate on I-271. (Plaintiff's Exhibit 5.) Holstein explained that according to section 640-5.2, bituminous aggregate is recommended only when an existing shoulder is used as a travel lane in a construction zone. However, he explained that on the I-271 project, the existing shoulder was not used as a travel lane; instead, new lanes were constructed in the location of the former southbound shoulder, which had been torn apart. Further, Holstein testified that the language says that a bituminous aggregate *should* be used, meaning that it is not a mandatory requirement.

{¶ 30} The court finds Holstein's opinion to be more credible than Ramisch on the standard imposed, if any, by section 630-5(2)(c) of the Traffic Engineering Manual. Ramisch admitted that he has never worked for ODOT, he has never put his seal on any highway design plans, he has never interpreted the Traffic Engineering Manual before, yet he testified that section 630-5(2)(c)(vii) places a mandatory duty upon ODOT. The court finds that Holstein, who authored this language in the Traffic Engineering Manual, was more credible in his testimony. Specifically, Holstein testified that section 630-5(2)(c) of the Traffic Engineering Manual is used in the design phase of a construction project; that section 630-5(2)(c)(vii) is not a mandatory standard but is part of the MOTAA planning process to assist the designer of the construction project. While Gmitric admitted that he was not aware of this section of the Traffic Engineering Manual, the court finds that his inspection of the contractor's work prior to the opening

of the cross-over did not require him to use this section of the Traffic Engineering Manual. Instead, Gmitric had to determine that the contractor's work complied with the design plans, which only required a one foot paved shoulder. The court finds that defendants did not breach a duty imposed by the Traffic Engineering Manual.

{¶ 31} York's accident occurred on November 30, 2006, and the Traffic Engineering Manual was revised on July 16, 2004. Gmitric testified that the first page of the I-271 project plan states that ODOT's 2002 specifications govern the project. Further, the project was approved by the district deputy director on September 15, 2004, and it was approved by ODOT's director on November 3, 2004. (Defendants' Exhibit A.) Holstein explained that the I-271 project was well beyond the design phase when the change in section 630-5(2)(c)(vii) occurred. Even plaintiff's expert admitted that the construction plans had been finalized when section 630-5(2)(c)(vii) was added to the Traffic Engineering Manual. ODOT did not adopt USDOT's guideline that subsequent safety features should be incorporated during the construction phase. Accordingly, the court finds that ODOT did not breach any duty when it did not incorporate the two foot paved shoulder into the design plans for the I-271 project.

{¶ 32} Further, defendants argue that even if section 630-5(2)(c)(vii) of the Traffic Engineering Manual imposes a mandatory duty, they are entitled to discretionary immunity regarding ODOT's decision not to update previously existing plans when new safety guidelines are put into effect. In her reply to defendants' post-trial brief, plaintiff argues that defendants failed to raise discretionary immunity as an affirmative defense in their answer and thereby waived it. Discretionary immunity is an affirmative defense that should be set forth in defendants' answer; however, it is not waived if the defense is raised at trial and the issue is tried with the express or implied consent of the parties pursuant to Civ.R. 15(B). *Pottenger v. Ohio Dept. of Transp.,* 10th Dist. No. 88AP-832 (Dec. 7, 1989).[3] In her opening statement, plaintiff stated that ODOT's policy not to

---

[3]Civ.R. 15(B) states: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence

update design plans when a safety measure is subsequently updated is "bad policy." Further, plaintiff's expert testified that it is a "lousy policy" if ODOT does not incorporate subsequent safety measures into previously designed construction plans. Accordingly, the court finds that plaintiff consented to try the issue of defendants' discretionary immunity.

{¶ 33} It is well established that "the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State*, 14 Ohio St.3d 68, 70 (1984); *Pottenger*, supra. ODOT's decision as to whether to increase the width of the paved shoulder when section 630-5(2)(c) of the Traffic Engineering Manual was updated is clearly a policy decision of such nature. Holstein testified that ODOT generally does not apply subsequently developed design procedures but that they *may* be incorporated for minor changes. Further, he explained that no projects would ever be completed if all subsequent updates were incorporated into previously existing design plans. ODOT's decision not to incorporate the two foot paved shoulder is the type of discretionary decision that is entitled to the protection discretionary immunity. See *Kniskern v. Township of Somerford*, 112 Ohio App.3d 189 (10th Dist.1996). The court concludes that ODOT is entitled to discretionary immunity for its decisions surrounding the incorporation of subsequent design guidelines.

{¶ 34} Plaintiff also argues that ODOT was negligent in failing to properly inspect the aggregate material adjacent to the paved shoulder as it was constructed by the contractor. Ramisch testified that based on his observations of the photograph contained in Plaintiff's Exhibit 10, the difference in elevation between the paved shoulder and the aggregate was at least two inches. However, Gmitric testified that he could not determine the difference in elevation while looking at the same photographs.

{¶ 35} Further, plaintiff has failed to convince the court that the aggregate material was too soft. Ramisch testified that ODOT could have tested the aggregate to determine its strength and that there was no record indicating that ODOT performed this test. However, Ramisch also admitted that aggregate compaction tests are usually not

would prejudice him in maintaining his action or defense upon the merits. The court may grant a

conducted for temporary roads, like the one involved in this case. Furthermore, Ramisch admitted that he was not aware that ODOT had any notice that the shoulder was soft.

{¶ 36} Finally, regarding the strength of the aggregate, Holstein admitted that a bituminous aggregate would have made the aggregate stronger. However, he explained that section 640-5.2 of ODOT's Traffic Engineering Manual, which requires that an aggregate surface be constructed with a bituminous surface, did not apply to the cross-over at issue because an existing shoulder was not used as a travel lane and section 640-5.2 only applies when a shoulder is used as a travel lane. The court finds that ODOT did not breach any duty in not using a bituminous aggregate on the I-271 project inasmuch as new northbound lanes were constructed in the location of the former southbound shoulder and an existing shoulder was not used as a travel lane. Accordingly, the court finds that plaintiff has failed to prove by a preponderance of the evidence that ODOT breached any duty in its inspection of the aggregate material.

{¶ 37} Finally, the court finds that the cross-over in the construction zone was reasonably safe for the traveling public. Killen testified that a driver has an obligation to drive his vehicle within the marked lanes. Further, Ramisch admitted that York's semi-truck trailer had one and a half feet on either side of the vehicle as he traveled through the lane in the cross-over. Accordingly, the court finds that defendants did not breach their duty in the inspection and approval of the cross-over as it pertained to the one foot paved shoulder and that the road was reasonably safe for the motoring public.

{¶ 38} The court finds that ODOT maintained I-271 in a reasonably safe condition for the traveling public during the construction project. Killen testified that he saw signs alerting drivers of the construction zone as he approached the cross-over. He also testified that the edge lines were very bright and that there were reflectors on the road. Ramisch admitted that throughout the cross-over there was a bright edge line on the road, reflectors on the edge of the road, reflective delineators next to the roadway, and overhead lighting. Further, Gmitric testified that there were raised pavement markers on both the edge lines and the center lines. Ramisch also admitted that he found no fault with ODOT's signage throughout the construction zone. The court finds that the

---

continuance to enable the objecting party to meet such evidence."

signs, reduced speed, reflective delineators, and bright edge lines all made the cross-over on I-271 reasonably safe for the traveling public.

{¶ 39} Even assuming arguendo that ODOT was negligent, plaintiff would not prevail. The issue of whether decedent was also negligent must be analyzed under comparative negligence. The common law of Ohio imposes a duty of reasonable care upon motorists that includes the responsibility to observe the environment in which one is driving. See *Hubner v. Sigall*, 47 Ohio App.3d 15, 17 (10th Dist.1988). Testimony provided that the two lanes in the cross-over were each 11 feet wide, with a 1 foot berm on each side. As Ramisch testified, York had one and a half feet of space on each side of his semi-trailer truck as he drove in his lane through the cross-over. The court finds that any alleged breach by defendant is outweighed by York's own negligence in failing to observe the roadway and failing to maintain control of his vehicle in his lane of travel.

{¶ 40} For the foregoing reasons, the court finds that plaintiff has failed to prove that defendants were negligent in their design and inspection of the construction zone. Inasmuch as plaintiff failed to prove her claims by a preponderance of the evidence, the derivative claim for loss of consortium also must fail. See *Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 93 (1992). Accordingly, judgment shall be rendered in favor of defendants.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RADIE GRACIE YORK, etc., Admx.

Plaintiff

v.

OHIO DEPARTMENT OF TRANSPORTATION, et al.

Defendants

Case No. 2008-09031

Judge Clark B. Weaver Sr.

<u>JUDGMENT ENTRY</u>

{¶ 41} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendants. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
CLARK B. WEAVER SR.

Judge

cc:

Jonathan D. Mester
Thomas Mester
1370 Ontario Street, Suite 100
Cleveland, Ohio 44113-1792

Mark R. Wilson
William C. Becker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

007
Filed March 12, 2012
To S.C. reporter August 15, 2012